Argued March 30, affirmed April 17, 1917.

# MEAGHER v. EILERS MUSIC HOUSE.

(164 Pac. 373.)

**Appeal and Error—Review—Findings.**

1. The findings of the trial court being equivalent to a verdict, the evidence will not be examined on appeal except to ascertain whether any of it is competent to support the findings.

**Landlord and Tenant—Landlord's Acceptance of Premises.**

2. Where the tenant abandoned the premises and attempted to surrender them to the landlord, and the latter refused to accept them, the landlord's reletting the premises to another for the benefit of the original lessee and "subject to the order and ready for the occupation" of the tenant at any time he should return did not operate as an acceptance of the premises by the landlord.

**Landlord and Tenant—Reletting Abandoned Premises.**

3. Where a landlord relet abandoned premises for the benefit of the abandoning tenant, but was unable to collect any rent from the

84 Or.—3

new tenant, the abandoning tenant was liable for the rent, as if the premises had not been relet.

[As to what landlord may do, after abandonment of premises by tenant, and still hold tenant to his obligation, see note in 114 Am. St. Rep. 717.]

From Multnomah: CALVIN U. GANTENBEIN, Judge.

Department 1.    Statement by MR. JUSTICE HARRIS.

This is an action to recover part of a deposit given by a lessee to a lessor as security for the payment of rent.    The Eilers Music House, a corporation, leased two rooms in the Eilers Building in the city of Portland to D. V. Meagher for a term commencing on July 1, 1912, and ending August 31, 1916, for $13,750 payable "in monthly payments of $275 each, in advance, on the first day of each and every month" during the term.    At the time of entering into the agreement of lease with the Eilers Music House, the lessee deposited $550 with the lessor with the understanding that if Meagher performed all his agreements then the deposit "shall be applied to cover the rent" for the last two months of the term; but if Meagher failed to keep his promises or failed promptly to pay the rent "then the said sum of $550 shall be retained by the lessor as liquidated damages for such breach or failure to pay rent."    Meagher paid the rent to and including the month of September, 1913, but made no more payments.

After reciting the execution of the lease, the deposit of $550 as security for the payment of the rent, payment of the rent until and including September, 1913, and default in payment for the month of October, the complaint alleges that the lessor "on the 7th day of October, 1913, elected to and did declare the said lease forfeited and rented the same to one R. E. Farrell under a verbal lease until November 7, 1913, when the defend-

ant entered into a written lease for the period of 4 years eleven months." Continuing, the complainant avers that "after deducting the amount of rent due from October 1, 1913, to the time the defendant elected to declare said lease forfeited" the defendant has remaining in its hands and belonging to the plaintiff a balance of $485.83.

The answer denies that the lessor "forfeited" the lease and alleges that Meagher personally occupied the rooms until about August 1, 1913, when he left Portland " for parts unknown and left one Campbell occupying the premises." The defendant avers that subsequently on October 7, 1913, the plaintiff, acting through Campbell, abandoned the premises and

"attempted to surrender the same to the defendant and left the keys for said premises in the place of business of the defendant herein in the city of Portland, without the knowledge or consent of the defendant; that the defendant upon the learning of the vacating and abandoning of said leased premises by the agent of the plaintiff, the said —— Campbell, notified the plaintiff that said premises were still at his disposal and the plaintiff thereupon refused to repossess or to take charge of said leased premises."

The defendant avers that because the rent was not paid for the months of October and November, 1913, it applied the deposit in payment of the rent for those two months and that the rooms were

"left subject to the order and ready for the occupation of the plaintiff at any and all times had the plaintiff returned to Portland to occupy the same, either by himself or any representative until the 30th day of November, 1913."

The parties waived a jury and the cause was tried by the court. After hearing the evidence the court found that Meagher abandoned the premises and at-

tempted to surrender the rooms to the lessor by leaving the keys "in the place of business of defendant" without the knowledge or consent of the lessor, who upon learning of the abandonment notified Meagher that the rooms were at his disposal; that on October 7, 1913, the defendant permitted R. E. Farrell to occupy part of one of the rooms under a verbal agreement to the effect that he could occupy the "premises temporarily and only until the said D. V. Meagher would return and take charge of said leased premises"; and that on November 7, 1913, the defendant entered into a written lease with Farrell for one of the rooms for a period of five years

"said lease to go into effect from and after the 7th day of December, 1913, and which lease was not delivered and was not to be considered binding at any time should D. V. Meagher return and take possession and occupy said premises under his said lease."

The court also found that the

"leased premises were left subject to the order and ready for the occupation of the said D. V. Meagher at any and all times had he returned to Portland to occupy the same either by himself or any representative until after the end of November, 1913, and the said D. V. Meagher was not ejected from said premises and the defendant did not elect to, and did not declare said lease forfeited for non-payment of rent or otherwise until after the end of the month of November, 1913, and the defendant did not collect any money or rent from the said Farrell or from any other person for said premises for the said months of October and November or either of them excepting as the defendant received the rent for said premises during the said two months by charging the same against the said deposit of $550.00 upon failure of the said D. V. Meagher to pay the rent for said two months or either of them."

The trial court ruled that, on the facts found by him, the plaintiff was not entitled to recover and consequently a judgment was entered for the defendant, and the plaintiff appealed.                    AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. W. L. Cooper*.

For respondent there was a brief and an oral argument by *Mr. Miller Murdoch*.

MR. JUSTICE HARRIS delivered the opinion of the court.

Quoting from the printed brief filed by the plaintiff:

"So the only question we have to present to this court at this time is: Was the leasing of the building to Farrell an acceptance of the surrender of the lease by the tenant or was the building leased to Farrell for the benefit of the plaintiff as alleged in the defendant's answer?"

1. The findings of the trial court are equivalent to a verdict and consequently upon appeal the evidence will not be examined except to ascertain whether any of it is competent to support the findings: *Eugene* v. *Lowell*, 72 Or. 237 (143 Pac. 903); *Weigar* v. *Steen*, 81 Or. 72, 74 (158 Pac. 280).

There was evidence relating to the facts found by the trial court and hence we shall make no further inquiry concerning the evidence.

In brief the facts as found by the court disclose a lease, a deposit to secure the payment of rent, a default in the payment of rent, an abandonment of the premises by the lessee and reletting by the lessor but "subject to the order and ready for the occupation" of Meagher at any and all times. The plaintiff contends that reletting one of the rooms to Farrell of it-

self terminated the lease to Meagher. The defendant argues that the reletting was for the benefit of Meagher and subject to his lease, and that therefore the first lease was not affected by the reletting.

The instant case does not present a situation where there was an agreement of the lessor and lessee manifesting an intention to cancel the lease, or where there was a surrender by the lessee and an express acceptance by the lessor, or where there was an express release by the lessor, or where the lessor has himself actually put the tenant out of possession by legal process or otherwise, or where the landlord has given notice of the termination of the lease; and consequently we must put aside most of the authorities relied upon by plaintiff, such as *Carson* v. *Arvantes,* 27 Colo. 77 (59 Pac. 737); *Cunningham* v. *Stockon,* 81 Kan. 780 (106 Pac. 1057, 19 Ann. Cas. 212); *Sutton* v. *Goodman,* 194 Mass. 389 (80 N. E. 608); *Hall* v. *Middleby,* 197 Mass. 485 (83 N. E. 1114); *Hecklau* v. *Hauser,* 71 N. J. Law, 478 (59 Atl. 18); *Michaels* v. *Fishel,* 169 N. Y. 381 (62 N. E. 425); *Scott* v. *Montells,* 109 N. Y. 1 (15 N. E. 729); *Caesar* v. *Rubinson,* 174 N. Y. 492 (67 N. E. 58).

2. Meagher abandoned the premises and attempted to surrender them to the lessor but the latter refused to accept the surrender, unless it can be said that the reletting to Farrell of itself operated as an acceptance. In reletting to Farrell for October and November, the Eilers Music House did all that it could have done to manifest its purpose to continue the leasehold interest of Meagher for it let the room to Farrell subject to the lease of Meagher, and possession of the premises could have been had by the latter "at any and all times had he returned to Portland." The letting to Farrell did not operate to exclude Meagher, but on the

contrary Meagher's right was preserved, and until the end of November both the defendant and Farrell recognized that Meagher's right was superior to any right granted to Farrell. Upon the abandonment of the premises the lessor could have left the rooms vacant and, without attempting to relet them, it could have applied the deposit in payment of the rent for October and November. Reletting one of the rooms was for the benefit of Meagher since liability under the lease was reduced to whatever extent rentals were paid on the reletting. Some authorities declare that a reletting is of itself a termination of the lease while others hold to the contrary. Some precedents declare that the right to relet is dependent upon the consent of the lessee, express or implied, and this line of precedents involves the element of prior notice to the lessee, but within the rule of this class of cases the lessor could not relet and at the same time preserve the first lease if the whereabouts of the original lessee were unknown; and, moreover, many adjudications adhering to this doctrine strikingly illustrate the extremes to which courts have been pushed in order to hold that a reletting was with the consent of the lessee. It is not necessary, however, to analyze the reasoning of the cases announcing the variant doctrines in the different jurisdictions, for a quarter of a century ago this court took its place with those tribunals which hold that a landlord may relet for the benefit of an original lessee who has abandoned the premises, and that the act of reletting does not of itself necessarily effect a termination of the lease. The Eilers Music House did not repossess itself of its former estate, but it did what it did for the benefit of the lessee and subject to his recognized, admitted and preserved right to the possession of the premises. If the landlord had done noth-

ing the lessee would nevertheless have been liable for the full rental even though the premises had remained vacant; and the lessee should not complain if the landlord did its best to minimize his liability. This conclusion is not only in conformity with *Bowen* v. *Clarke,* 22 Or. 566 (30 Pac. 430, 29 Am. St. Rep. 625), but it is also in complete harmony with many other well-considered adjudications: *Respini* v. *Porta,* 89 Cal. 464 (26 Pac. 967, 23 Am. St. Rep. 488); *Humiston, Keeling & Co.* v. *Wheeler,* 175 Ill. 514 (51 N. E. 893); *Marshall* v. *John Grosse Clothing Co.,* 184 Ill. 421 (56 N. E. 807, 75 Am. St. Rep. 181); *Auer* v. *Penn,* 99 Pa. St. 370 (44 Am. Rep. 114). See, also, the exhaustive note to *Higgins* v. *Street,* as reported in 13 L. R. A. (N. S.) 398.

3. The Eilers Music House was not able to collect any money from Farrell; and according to the finding of the trial court the landlord did not collect rent from any person for the months of October and November except as rent was received by applying the deposit in payment of the rental; and hence the defendant is not chargeable with moneys that it did not receive and could not collect from Farrell. The judgment is affirmed.                          AFFIRMED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BENSON and MR. JUSTICE BURNETT concur.