Argued April 12, affirmed May 14, rehearing denied June 11, 1918.

# GILE &, CO. *v.* LASSELLE. ?'

## (171 Pac. 741.)

**Evidence—Opinion of Witness—Construction of Contract—Province of Court.**

1. In view of Section 136, L. O. L., providing that all questions of law and the construction of statutes and other writings are to be decided by the court, and Section 717, providing that for the proper construction of an instrument the circumstances under which it was made, etc., may be shown, so that the judge may be placed in the position of those whose language he is to interpret, permitting a party to a written contract to state what he understood by term "time is of the essence of the contract," and to state whether according to his understanding title passed until certain things were done, was error.

**Appeal and Error—Permitting Witness to Construe Contract—Harmless Error.**

2. Where decision was in harmony with true construction of written contract, permitting a witness who was a party to the contract to construe it was harmless.

**Evidence—Judicial Knowledge—Fruit Season.**

3. The Supreme Court, by putting itself in the position of the parties on June 27, 1916, when contract was made, as it is required to do by Section 717, L. O. L., knows by the laws of nature and the fruit season that no present crop of prunes of the season of 1916 was dried and ready for shipment on June 27th.

**Sales—Transfer of Title—Property not in Existence.**

4. One cannot presently convey title to property which is not in existence.

[As to sales of property not in existence, see note in 81 Am. St. Rep. 42.]

**Sales—Contract for Future Delivery—Title.**

5. One may make a contract for future delivery, though he has no property of the kind on hand when the contract is made.

**Sales—Sale of Crop—Passing of Title.**

6. Provision of contract for sale of year's crop of prunes that it is understood by both parties to constitute an ?bsolute sale, and that seller assumes all risk of loss or damage until delivery, amounts to no more than saying that when the terms of the writing have been fulfilled the result will be an absolute sale.

**Sales—Executory Contracts—Passing Title.**

7. To pass title under an executory contract there must be some further act of the parties amounting to performance of executory

feature when property actually comes into existence and possession of seller.

### Sales—Executory Contract—Right of Possession.

8. Contract for sale of year's crop of prunes, providing that it constitutes an absolute sale, that seller assumes risk of loss or damage until delivery, that buyers agreed to pay for said crop when delivery is completed, etc., was executory, and buyers were not entitled to possession until they performed concurrent covenant of paying at time of delivery; such covenant not having been waived.

### Equity—Maxims—Mortgage in Advance of Acquisition.

9. Where chattels are mortgaged in advance of their acquisition, the court sitting in chancery will construe the mortgage as pledging the property the instant it subsequently comes into the mortgagor's ownership, on the ground that equity will consider that as done which ought to have been done.

### Sales—Remedy of Buyer—Recovery of Goods.

10. Since a claim under an executory contract for the sale of a year's crop of prunes will not support replevin by the buyers against the seller, replevin will not lie against defendant who purchased prunes after seller got possession and before plaintiff buyers performed concurrent covenant of paying at time of delivery.

### Trial—Argumentative Instructions—Refusal.

11. In replevin, where plaintiff claimed the property in its own right and defendant claimed it as bailee for his principal and also sought damages for detention, a requested instruction that the only damages that could be assessed against plaintiff is the sum of one cent per pound for the property taken from defendant, as defendant pleads the property right to have been in a named person and defendant's interest in said property to have been only a contract to process at a stipulated price per pound, *held* argumentative and misleading under pleadings and evidence and properly refused in view of Section 153, L. O. L., making a distinction as to the value of the property and damages for its detention.

### Appeal and Error—Error Favorable to Complaining Party.

12. In replevin, where plaintiff claimed property in its own right and defendant claimed as bailee for his principal, refusal of plaintiff's requested instruction which would have allowed a recovery of the gross sum of one cent per pound as damages without deduction for necessary expenses and labor, *held*, harmless, since, if treated as a precept for the measure of damages for detention it would have been harmful to plaintiff.

### Appeal and Error—Instructions not Supported by Pleadings or Evidence—Harmless Error.

13. Where the outcome of the case should have been the same regardless of estoppel, error in giving instruction on estoppel is negligible.

# From Linn: PERCY R. KELLY, Judge.

Department 1.

This is an action of replevin in which the plaintiffs seek to recover "about 794 bags of Oregon prunes," containing "about 70,000 pounds" of the value of $4,500. They allege that the property was in possession of one Percival I. Rust, on storage by them, subject to their order and shipping directions, and that the defendant wrongfully took the prunes from the possession of Rust, caused them to be loaded into a railway car and shipped to Albany where the defendant detains them unlawfully to the plaintiffs' damage in the sum of $350. They demand judgment for the recovery of possession of the property, or for $4,500 as its value alternatively, together with $350 damages.

The answer denies the whole complaint and avers that a partnership by the name of John H. Leslie & Company of Chicago, Illinois, employed the defendant, as its agent, to purchase, treat and pack prunes, in pursuance of which he purchased from Rust 74,661 pounds of prunes of the reasonable value of $5,200, the same being contained in the 794 bags and being the identical prunes described in the plaintiffs' complaint. He says, also, that for his services so rendered, he was to receive a commission of one cent per pound, and that after the fruit had been properly treated and packed he was required to ship it immediately to Leslie & Company. He avers that he bought the prunes in question with the money of his principal, took it into his own custody and, while he was engaged in treating and packing it, the plaintiffs took the same by virtue of a writ of replevin issued in the present case. He states that at the time alleged in the complaint he was, and at all times since then, has been and still is entitled to the immediate possession of the prunes and the whole thereof; that Leslie & Company are the

absolute owners of said property and that this defendant as their agent is entitled to the immediate possession thereof.

Further answering, the defendant sets up a contract entered into on June 27, 1916, between the plaintiffs and Rust, of which the following is a copy:

### "BUYING CONTRACT.

"Roseburg, Oregon, June 27, 1916.

"In consideration of the prices per pound herein specified, Percival I. Rust, the seller, has sold, and H. S. Gile Company, the buyer, has bought the hereinbefore mentioned 1916 crop of prunes produced during the current year, upon the following described property, the output of his dryer at Cottage Grove, guaranteed to not be less than one minimum carload, which crop said seller agrees to properly dry, cure and deliver in its entirety, unless otherwise agreed to in writing by buyer, and hereby guarantees to be the sole and absolute property of seller, and free from all incumbrances, except as herein specified, and which, with the price per pound, variety and quantity (estimated by the seller) is as follows:

"Quantity, 40,000 lbs. or more.    Variety, Italians. Price paid per pound for prunes testing between 30–35, 6¼cts.; 35–40, 6 cts.; 40–45, 5¾ cts.; 45–50, 5½ cts.; 50–55, 5¼ cts.; 55–60, 5 cts.; 60–65, 4¾ cts.; 65–70, 4½ cts.; 70–75, 4½ cts.; 75–80, 4 cts.; 80–85, 3¾ cts.; 85–90, 3½ cts.; 90–95, 3¼ cts.; 95–100, 3 cts.; 100 over —— cts., delivered f.o.b. cars Cottage Grove, sax to be furnished by the buyer. French or Petites same prices as Italians.

"Said buyer agrees to pay for said crop at the price named, when delivery is completed, provided the seller delivers the same thoroughly and properly dried and cured, and free from burned or soft fruit, and in good marketable and merchantable condition.    Delivery to be made in bags as soon as buyer requests after drying, but not later than Nov. 15th, 1916.

"Buyer shall be entitled to weigh back and reject any portion of crop delivered, not conforming with the

terms and conditions of this contract, and such rejection by buyer shall not invalidate this contract or release the seller from any of its obligations.

"Buyer to accept prunes as to count and grade only after prunes have been put in bags.

"This contract is understood by both parties to constitute an absolute sale, but until delivery has been completed seller agrees to and does assume all risk of loss or damage.

"Time is the essence of this contract.

"No alterations or erasures permitted, save with the written consent of the buyer.

"In the event of strikes, quarantine, fire or failure of transportation companies to provide cars, buyer may extend time of delivery under this contract, for a period equal to that so lost, and designate another reasonable point of delivery.

"PERCIVAL I. RUST, Seller.
"H. S. GILE & COMPANY, Buyer.
"By R. L. GILE."

He states that at the time this agreement was made, Rust was not the owner of any prunes of any kind or nature, nor of any orchard or trees upon which such fruit would grow, nor was he the owner of any contracts for prunes, all of which was known and understood by both him and plaintiffs. The defendant claims that he bought the property in question from Rust about November 23, 1916, in good faith, believing that Rust was the owner thereof.

For another answer the defendant pleads what he claims is an estoppel operating against the plaintiffs and denying them the right to claim property in the fruit in question on the ground that they permitted Rust to retain the possession of it, to employ labor in and about it and to exercise acts of ownership over it; that finding Rust in possession of the property under such circumstances and being without any knowledge or intimation that plaintiff had any right

to it, the defendant bought the same for his principal, paid Rust the price thereof and took it into his own possession.

The reply challenges the new matter in the answer in material particulars, avows the making of the contract quoted in the defendant's pleading and states that in pursuance thereof Rust did afterwards produce, procure and have ready for delivery the prunes here involved and notified the plaintiffs that the same were ready for delivery; that they thereupon shipped to him the necessary sacks to contain them, having thereon the firm name of the plaintiffs, into which defendant Rust put the prunes for the purpose of fulfilling the contract; that the fruit was in those bags at the time the defendant took it, which he did with knowledge that it was the property of the plaintiffs. The jury rendered a verdict to the effect that defendant is entitled to a return of the property described as 74,661 pounds of prunes of the value of $5,000, together with damages in the sum of $500. Judgment was rendered upon this verdict in favor of the defendant for the return of the property with $500 damages, or, in case the property could not be returned, that the defendant have and recover from the plaintiffs $5,000, together with $500 damages and costs and disbursements. The plaintiffs appeal. Affirmed.

For appellants there was a brief over the names of *Mr. William H. Trindle* and *Messrs. Hill & Marks,* with an oral argument by *Mr. Trindle.*

For respondent there was a brief over the names of *Messrs. Weatherford & Weatherford* and *Mr. E. F. Bailey,* with an oral argument by *Mr. James K. Weatherford.*

BURNETT, J.—Both parties attempt to deraign title to the property from Rust. This is an action at law and not a suit in equity and the matter must be adjudicated by legal rules as distinguished from equitable maxims. The crux of the situation is found in the construction to be given to the admitted contract. It is said in Section 136, L. O. L.:

"All questions of law, including the admissibility of testimony, the facts preliminary to such admission, and the construction of statutes and other writings, and other rules of evidence, are to be decided by the court. * * "

It is also said in Section 717:

"For the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument, and of the parties to it, may also be shown, so that the judge be placed in the position of those whose language he is to interpret."

1–5. The bill of exceptions discloses that the plaintiffs called Mr. Rust as a witness, and among other things, had him identify the contract between himself and the plaintiffs. On cross-examination the defendant's counsel asked him: "What did you understand by this term of the contract, 'Time is of the essence of the contract?'" Another question was as follows:

"Now, Mr. Rust, it states in this contract that the 'said buyer agrees to pay for said crop at the price named, when delivery is completed, provided the seller delivers the same thoroughly and properly dried and cured, and free from burned or soft fruit, and in good marketable and merchantable condition.' Now, what was your understanding in reference to whether any title passed to Gile until all this was done, or not?"

89 Or.—8

To these and similar questions the plaintiffs objected on the ground that they had a tendency to vary the terms of the written instrument which appear clearly upon its face and also that they were not proper on cross-examination. The court overruled this objection. This ruling was manifestly erroneous, because it allowed the witness to construe the contract, thus invading the function of the trial judge under the excerpts from the Code above set out. The view of the contract which we adopt, however, makes this error harmless because the result reached was in harmony with the true meaning of the instrument which ought to have been stated by the trial judge without hearing Rust's construction.

The theory of the plaintiffs is that the legal effect of the agreement in question was to transfer the title to the property from Rust to them, if not at its date, at least at the moment when he had in his possession as the output of his drier, dried prunes which were suitable for filling the contract. The defendant maintains that at best it was an executory agreement which conveyed to the plaintiffs no present title or right of immediate possession without which they cannot maintain replevin. Putting ourselves in the position of the parties on June 27, 1916, when the contract was made, as we are required to do by Section 717, L. O. L., we must know by the laws of nature and the fruit season in this country that there was then no present crop of prunes of the season of 1916, dried and ready for shipment, even if the seller had an orchard upon which potential property in such fruit could be predicated. The testimony shows without dispute that at that time Rust had no prunes of any kind and no orchard or contract by means of which he could expect to acquire them. It is common sense that a man cannot pres-

ently convey title to property which is not in existence. It is true that he may make a contract for future delivery, although he has no property of the kind on hand when the stipulation is made. The authorities, however, are practically unanimous that such a covenant is executory in its nature, notwithstanding it contains present words of selling and buying.

6–9. In the present instance the writing begins with the recital that the seller ''has sold'' and the buyer ''has bought'' the 1916 crop of prunes, the output of Rust's drier. It is also said in the body of the instrument: ''This contract is understood by both parties to constitute an absolute sale, but until the delivery has been completed the seller agrees to and does assume all risk of loss or damage.'' This language is no stronger than that above mentioned and adds nothing to its force. It does not amount, in effect, to any more than saying that when the terms of the writing have all been fulfilled, the result will be an absolute sale. When we consider the whole instrument together we find that in it there are dependent covenants, the performance of which must be synchronous and that neither party can put the other in default until he has himself fully performed or tendered performance of what he is to do on his part. This doctrine is illustrated in such cases as *Lewis* v. *Craft,* 39 Or. 305 (64 Pac. 809) ; *Longfellow* v. *Huffman,* 49 Or. 486, 490 (90 Pac. 907). The principle that at law the seller cannot presently pass title to property which is not in existence, either actually or potentially, or which he must hereafter acquire, is enunciated in the cases of *Fonville* v. *Casey,* 5 N. C. 389 (4 Am. Dec. 559) ; *Moody* v. *Wright,* 13 Met. (54 Mass.) 17 (46 Am. Dec. 706) ; and *Dickey* v. *Waldo,* 97 Mich. 255 (56 N. W. 608, 23 L. R. A. 449, and notes). It is argued by the plaintiffs

that although title did not pass at the date of the contract on account of the property not being then in existence, yet afterward when the seller did acquire the fruit of the kind and quality prescribed by the agreement, the ownership then automatically passed to the plaintiffs in manner and form sufficient to support replevin. The rule supported by the authorities quoted, as well as by most other precedents, however, is that in order really to pass the title, as distinguished from rights under an executory contract, when the property has actually come into existence and possession of the seller, there must be some further act of the parties amounting to a performance in that feature of the covenant which hitherto has been executory. The plaintiffs and Rust entered into an agreement the working out of which was designed to pass the title to personal property from the latter to the former. The terms of that process are described in their writing. They expressly say that the "buyer agrees to pay for said crop at the price named when delivery is completed." Without respect to the general property in the prunes, in whomsoever that may be, as against the action for mere possession of them Rust would be entitled to hold the property under this contract until plaintiffs had performed their concurrent covenant of paying at the time of delivery. This court has several times held that a claim under an executory contract will not support replevin by the buyer from the seller. This is taught in *Hubler* v. *Gaston,* 9 Or. 66 (42 Am. Rep. 794) ; *Rosenthal Bros.* v. *Kahn Bros.,* 19 Or. 571, 573 (24 Pac. 989) ; *Hamilton* v. *Gordon,* 22 Or. 557, 558 (30 Pac. 495) ; *Backhaus* v. *Buells,* 43 Or. 558, 569 (72 Pac. 976, 73 Pac. 342), and other cases. The rigor of this rule of law is somewhat tempered under certain circumstances in equity, where chattels

are mortgaged in advance of their acquisition. The court sitting in chancery will construe the mortgage as pledging the property the instant it subsequently comes into the mortgagor's ownership, by imputing to him the act necessary to that result, on the ground that equity will consider that as done which ought to have been done. The rule is different at law where the buyer is remitted to his action against the recreant seller for damages for his breach of his executory contract to transfer the title and possession of the goods.

10. There is no situation disclosed in the testimony which would support replevin by the plaintiffs as against Rust. It is not pretended that they ever performed their covenants. At best they only advanced to him a part of the purchase price and there is nothing in the testimony or pleadings indicating that Rust waived performance of their concurrent covenant to pay at the time of delivery, so that irrespective of where the general property lies the right to immediate possession has never vested in plaintiffs. They are not in any better plight in respect to the defendant. These conclusions dispose of the assignment of error to the effect that the court was wrong in refusing to direct a verdict for the plaintiffs.

11. Referring to the statement in the answer that the defendant was entitled to receive from his principal a compensation of one cent per pound for his services in buying prunes for their account and preparing them for shipment plaintiffs asked the court to charge the jury thus, and predicate error on the refusal of their request:

"You are further instructed that under the pleadings of this case the only damages you can assess against the plaintiffs in the event you should find for

defendant, is the sum of one cent per pound for the prunes taken from defendant, as defendant pleads the property right in the prunes to have been in John H. Leslie Company, of Chicago, Illinois, and defendant's interest in said prunes to have been only a contract to process them at the stipulated price of one cent per pound.''

In actions for the recovery of specified personal property, if it has not been delivered to the plaintiff, or the defendant by his answer claims a return thereof, the jury is required to assess the value of the property, if their verdict be in favor of the plaintiff, or if they find in favor of the defendant, and that he is entitled to a return thereof, and may at the same time assess the damages, if any are claimed in the complaint or answer, which the prevailing party has sustained by reason of the detention or taking and withholding such property: Section 153, L. O. L. A distinction, therefore, must be drawn between the value of the property and the damages for its detention. The instruction as framed is in some degree misleading and argumentative for the reason that it declares that the only interest the defendant has in the property is the stipulated price of one cent per pound. Many cases are cited in support of the plaintiffs' contention to the effect that when either party claims only a limited estate in the subject of the action, the alternative judgment in his favor must be for the value of the special title. Without exception, however, those cases are between the general owner of the property and the one claiming a special estate therein, as, for instance, between mortgagor and mortgagee, or bailor and bailee, and the like, or their successors in interest. They do not apply to cases like the present, where each is claiming the whole title and between whom there is no privity. The defendant had the right to show that

he would have made one cent per pound out of his connection with the property if he had been allowed to proceed, and this for the purpose of proving his damages. The general value of the property is quite another matter. If he was entitled to the possession of the property in its entirety, he was also entitled to a judgment for its value in case possession could not be returned to him. That a bailee may maintain replevin against one not entitled to possession and who has no title thereto is taught in *Lewis* v. *Birdsey,* 19 Or. 164 (26 Pac. 623); *Danielson* v. *Roberts,* 44 Or. 108 (74 Pac. 913, 102 Am. St. Rep. 627, 65 L. R. A. 526); *Casto* v. *Murray,* 47 Or. 57 (81 Pac. 388, 883); *Taylor* v. *Brown,* 49 Or. 423 (90 Pac. 673). This is not in derogation of the doctrine of *McNeff* v. *Southern Pac. Co.,* 61 Or. 22 (120 Pac. 6), where it was decided that a defendant holding a special property was entitled to an alternative judgment only for the value of his estate in the chattels. That case was between the successors in interest of the general owner of the property on one hand and one claiming a special estate therein in the other. Here, both parties claim the general property in the fruit, the firm in its own right and the other as bailee for a principal who is a stranger to the plaintiffs and not affected by any privity of contract or estate with them. Considered, therefore, as a request to charge the jury that the assessed value of the property, in case the same could not be returned, must be only one cent per pound, the instruction was clearly erroneous under the pleadings and evidence.

12. Considered as a precept for the measure of damages, the giving of this instruction would have been harmful to the plaintiffs themselves for it would allow a recovery of the gross sum of one cent

per pound as damages without any deduction for the necessary expense and labor of treating the prunes and packing them for shipment to Leslie & Company. In that sense, the error of refusal was harmless so far as the plaintiffs are concerned.

13. The court gave an instruction relating to the estoppel mentioned in the answer. Whatever may be said of the sufficiency of the pleadings or the merits of the instructions in that aspect of the controversy the result would be the same because it depends upon the construction given to the contract, the legal effect of which was at least to leave possessory rights in Rust and not in the plaintiffs in any event. The outcome of the case would be the same whether the estoppel was pleaded or proved or not. Hence, the error, if any, in giving the instruction on that subject is negligible. The most that the plaintiffs have shown is an executory contract on the part of Rust to sell and deliver prunes. For the default of Rust in failing to comply with his contract, if there was such a failure, the only remedy the plaintiffs have, if any, is by an action for damages for the breach of the executory contract so far as this record discloses.

These considerations lead to an affirmance of the judgment.                    :          AFFIRMED.

McBRIDE, C. J., BENSON and HARRIS, JJ., concur.