Argued March 15; modified April 5, 1932

# H. S. & D. INVESTMENT CO. *v.* McCOOL
## (9 P. (2d) 809)

*Robert R. Rankin,* of Portland (Bert S. Gooding, of Portland, on the brief), for appellant.

*George J. Perkins,* of Portland (J. O. Bailey, of Portland, on the brief), for respondent.

BELT, J.   This is an action to recover damages for the breach of an alleged executory contract to accept a lease. The plaintiff corporation is the owner of the Medical-Dental building, located in the city of Portland, which is rented exclusively to physicians, surgeons, and dentists. The defendant is a physician and surgeon specializing in the treatment of the eye. On the 14th day of February, 1929, during the course of construction of this building, the plaintiff and the defendant entered into a written agreement whereby the plaintiff agreed to lease to the defendant 945 square feet of floor space on the fifth floor of the building "for the term of two to five years from the time when the rooms prepared for the tenant shall be ready for occupancy" at a rental of $203 per month. It was stipulated in the memorandum agreement that as soon as the rooms were ready for occupancy a written lease would be executed by the parties in the form of a printed lease attached. This agreement was later modified to increase the rental to $210 per month in consideration of additional space. Pursuant thereto the defendant paid the first month's rental in the sum of $210.

Plaintiff alleges that, after the space in the building was reserved by defendant, it proceeded to construct and equip the rooms in accordance with the direction of the defendant and to make them suitable for his special practice; that, prior to the completion of the rooms, the plaintiff notified the defendant that they would be ready for occupancy on May 1, 1929, and

tendered a lease in keeping with the agreement, but that he refused to accept the same. Plaintiff alleges that, by reason of the failure of the defendant to accept the lease, it was unable to secure a tenant until October 15, 1929, and then only on condition that the rooms be remodeled and the special features required by the defendant removed. Plaintiff alleges that the cost of remodeling the offices to make them suitable for rental amounted to $1,321. It is averred that, on account of the special construction of the offices to suit the convenience and requirements of defendant, plaintiff was unable to secure any tenant between May 1, 1929, and October 15, 1929, and, therefore, is entitled to the stipulated rental of $210 per month in addition to the special damages sustained by reason of the remodeling of the offices.

Defendant admits the execution of the memorandum agreement for a lease but asserts that he is not bound thereby for the reason that the same is too indefinite and is void under the statute of frauds. He denies the damages alleged to have been sustained and asks for a judgment for the amount of the first month's rental which was paid to the plaintiff.

The cause being submitted to the court without a jury, a judgment was rendered in favor of plaintiff in the sum of $2,266. The trial court allowed plaintiff rental for five and one-half months at $210 per month together with $1,321 as special damages, and defendant was given credit in the sum of $210 for rental paid. Defendant appeals.

■ Appellant challenges the validity of the agreement for a lease on the ground that the term specified therein is indefinite and uncertain. It is his contention that the minds of the parties never met upon any

definite term for which the floor space would be rented. In our opinion, the term of "two to five years" is equivalent to a term of not less than two years nor more than five years. It is certain, however, that the proposed lessee at all events was bound to accept a lease for a two-year period. There was nothing indefinite about the commencement of the term, as that was to be determined when the rooms were ready for occupancy. That is certain which can be made certain. Defendant very frankly states that his reason for not accepting the lease was that, after the execution of the agreement for a lease, he secured an appointment to the chair of ophthalmology in the University of California. His payment of rental for the first month would indicate that he did not, at that time, consider the lease indefinite and uncertain. We apprehend there would have been no litigation had Dr. McCool not obtained the position with the University.

■ It is elementary that one of the essential elements of a lease is that the term should be definite and certain. Courts differ materially in the application of this legal principle. In Bacon's Abridgment under the title of Leases (L) it is said: "A lease was granted for seven, fourteen, or twenty-one years, as the lessee should think proper. And by Lord Mansfield, this was at least a lease for seven years; * * *." In *Boston Clothing Co. v. Solberg,* 28 Wash. 262 (68 P. 715), a term of "one or more years" was, in the absence of any stipulation for an option of the lessee, construed to mean a term of two years. *Sayles v. Lienhardt,* 119 Misc. Rep. 851 (198 N. Y. S. 337), does not, in our opinion, support the contention of the appellant. In that case, the tenant prepared and submitted to the landlord a printed form of a lease for her signature, wherein the

terms of 1, 2, and 3 years were specified, but with the clear intention that the landlord should strike out two of the terms specified and thereby leave the one term for which the lease was to run. None of the figures—1, 2, or 3—were stricken and the court very properly held that the minds of the parties never met upon any definite term of lease. In *Karagianis v. Stathopulos*, 248 Ill. App. 297, there was an oral agreement for the renewal of a lease for a term of from one to three years. True, the court stated that such term was indefinite but, since the oral agreement was void under the statute of frauds, the decision might well have been based solely on the statute. At any rate, what was said concerning the uncertainty of the term does not convince us that the minds of the parties did not at least meet upon the term of a one year lease.

■ Error is predicated upon the court's permitting the manager of the plaintiff corporation, over the objection of the defendant, to testify in response to the question, ''Explain the conversation you had with Dr. McCool with reference to the term of that lease,'' as follows: ''Dr. McCool wanted to know what the shortest lease that I would give; that he was undecided or unsettled with regard to the California affair, and I told him the shortest lease we would give would be two years, and I didn't know just exactly how long a lease he wanted to enter into. Well, I said, 'The longest we give you is five years, so we will put it down here as five, and it will be optional to you as between those two periods.' He could have had any lease he wanted to two, three, four, five years.'' We fail to see how the defendant was prejudiced by such testimony in view of the right of the court to declare, as a matter of law, that the defendant was obligated to accept the lease for a period of at least two years.

Assuming that the agreement to lease was sufficiently definite and certain, the defendant complains that the trial court erred in the assessment of damages. It is the defendant's contention that the measure of damages is the difference between the rental value of the property at the time of the alleged breach and the rent reserved for the entire term, citing among other authorities in support thereof the leading case of *Oldfield v. Angeles Brewing Co.*, 62 Wash. 260 (113 P. 630, 35 L. R. A. (N. S.) 426, Ann. Cas. 1912C, 1050). In the instant case it is recalled that the plaintiff secured a tenant whose term commenced on October 15, 1929, at the same rental as that which the defendant agreed to pay. Under this state of the record, it is plain that the damages should be limited to those sustained between the time when the suite of offices was prepared for occupancy for the defendant (May 1, 1929) and the date when it was occupied by the tenant (October 15, 1929). Since no lease was executed, this is not an action to recover rent. It is an action to recover damages for breach of an agreement to enter into a lease and the true measure of general damages is the difference between the stipulated rental and the rental which plaintiff, through the exercise of reasonable diligence, was able to obtain for the suite of offices. As stated in *Ettinger v. Christian Schuck Co.*, 81 Misc. Rep. 196, 142 N. Y. S. 481):

"The measure of damages is the difference between the contract price—i. e. the rental specified—and the amount the plaintiff was able to realize upon the premises after the breach, and not the rent reserved."

Also see *Cooper v. Aiello*, 93 N. J. Law 336 (107 Atl. 473); *Imperial Water Co. v. Cameron*, 67 Cal. App. 591 (228 P. 678); *Post v. Davis*, 7 Kan. App. 217 (52

P. 903) ; and 35 C. J. 1210, citing numerous cases under note 72 in support of the text. In 16 R. C. L. 560, it is said:

"* * * the measure of damages for failure to take possession according to agreement of a building which one agrees to erect for another's use and lease to him is the difference between the amount stipulated in the contract as rent and the sum for which the premises would rent to other parties during the stipulated term, plus such special damages as the lessor may plead and prove to have necessarily resulted from the breach of agreement." Citing Oldfield v. Angeles Brewing Co., supra.

We see no material difference in principle between the Washington case and the authorities above cited. After all, what the plaintiff, through the exercise of reasonable diligence, could have obtained as rental would, in fact, be the reasonable rental value. Since, in the instant case, plaintiff was unable to secure a tenant until October 15, 1929, the stipulated rental would control for the time during which the premises were unoccupied.

■ ■ The difficult question in this case is whether or not the plaintiff is entitled to recover as special damages the cost of repairing and reconditioning the offices in order to make them tenantable after the breach of the contract by the defendant. Plaintiff in its brief asserts: "Had the respondent not removed the special features installed for Dr. McCool, it probably could not have re-rented the space for any price." When the offices were planned to suit the particular convenience of Dr. McCool, the plaintiff must have known that, at the end of his term, it might be necessary to make certain alterations to suit the convenience of some other physician or surgeon. Such is one of the

hazards of a landlord. What if Dr. McCool had occupied the offices for 22 months and then had refused to complete his two-year lease? Would he then be liable for the full amount necessary to put the offices in a reasonable, tenantable condition? We think not. The breach of the defendant has caused the plaintiff to make these changes prior to the time when it probably would have been obliged to do so, viz., at the end of the term. We therefore conclude after considerable thought that at most plaintiff would only be entitled to interest on the amount of money expended for reasonable repairs from the time it was necessary to make them until the expiration of the two-year term. The sum of $1,321, or the cost of repairs, will be eliminated from the judgment and in lieu thereof plaintiff will be allowed interest on such sum at 6 per cent per annum for a period of two years. It follows that the judgment of the lower court will be affirmed in the sum of $1,103.52. This substantial reduction in the judgment entitles the defendant to costs and disbursements in this court.

BEAN, C. J., BROWN and CAMPBELL, JJ., concur.