Argued October 6, 1964, reversed and remanded January 13, 1965

# WRIGHT ET AL v. BAUMANN
### 398 P. 2d 119

*E. L. Kincaid* and *Frank B. Reid,* Eugene, argued the cause and submitted briefs for appellant.

*Robert W. Hill,* Eugene, argued the cause for respondents. With him on the brief were Hill & Pearson, Eugene.

Before McAllister, Chief Justice, and Perry, O'Connell and Denecke, Justices.

## O'CONNELL, J.

Plaintiffs seek to recover for a breach of agreement under which plaintiffs agreed to erect an office building and defendant, a dentist, agreed to enter into a lease of one of the offices after the building was constructed. Both parties waived a jury trial. Defendant appeals from a judgment for plaintiffs.

Defendant's principal assignments of error are di-

rected at the trial court's rejection of evidence tending to show that plaintiffs had the opportunity to mitigate damages but refused to do so. Plaintiffs' objections to defendant's questions relating to mitigation were sustained by the trial court, apparently on the ground that the instrument signed by the parties was a lease rather than a contract and that, being a lease, the lessor had no obligation to mitigate damages. Defendant contends that the rule relied upon by plaintiffs is inapplicable because the "Agreement" in question is not a lease but is a contract to make a lease, and that therefore plaintiffs are required to mitigate as in any other contract case. Finally, plaintiffs counter with the contention that the case was tried by defendant upon the theory that the "Agreement" was a lease and that he is now estopped to assert that it is a contract to enter into a lease.

Defendant's offer of proof clearly indicates that he made a reasonable effort to mitigate the damages resulting from his refusal to take possession of the part of the premises intended for his occupancy. The offer of proof showed that plaintiffs notified defendant on August 27, 1956, that the building would be ready for occupancy on September 24, 1956. On September 6, 1956, defendant notified plaintiffs that he did not desire to enter into a lease of any part of the building. It was further shown that defendant informed two doctors that the space allotted to him was available and that during September, 1956, the two doctors had offered to lease the space allotted to defendant on the terms and conditions specified in the "Agreement" in question but that plaintiffs refused to lease the office space to them, giving no reasons for the refusal to do so.

■ A majority of the courts, including Oregon, hold

that a lessor is not required to mitigate damages when the lessee abandons the leasehold.[①] In a few states it is incumbent upon the lessor to use reasonable means to mitigate damages.[②] If the transaction is a contract to make a lease rather than an executed lease, it is universally recognized that the landowner has an obligation to mitigate damages upon a breach of the contract by the promisor.[③]

■ The majority view, absolving the lessor from any obligation to mitigate is based upon the theory that the lessee becomes the owner of the premises for a term and therefore the lessor need not concern himself with lessee's abandonment of his own property. That view might have some validity in those cases where there is simply a lease of the land alone with no covenants except the covenant to pay rent. But a modern business lease is predominantly an exchange of promises and only incidentally a sale of a part of the lessor's interest in the land. As 2 Powell on Real Property, ¶ 221, p. 182 (1950) observes, the "growth in the number and detail of specific lease covenants has reintroduced into the law of estates for years a predominantly contractual ingredient" and that as a consequence "[i]n practice, the law today concerning estates for years consists chiefly of rules determining the construction and effect of lease covenants." These covenants in a modern business lease, particularly

---

[①] Bowen v. Clarke, 22 Or 566, 30 P 430 (1892); Meagher v. Eilers Music House, 84 Or 33, 164 P 373 (1917) (dictum); 1 American Law of Property, § 3.17, p. 213 (Casner ed 1952); Note, 12 Or L Rev 161 (1933). For additional cases see Annotations, 40 ALR 190 (1926); 126 ALR 1219 (1940).

[②] Benson v. Iowa Bake-Rite Co., 207 Iowa 410, 221 NW 464 (1928); Lawson v. Callaway, 131 Kan 789, 293 P 503 (1930); Strauss v. Turck, 197 Wis 586, 222 NW 811 (1929).

[③] H. S. & D. Inv. Co. v. McCool, 139 Or 266, 9 P2d 809 (1932); 1 American Law of Property, § 3.17, pp. 212-13 (Casner ed 1952); 5 Williston, Contracts, § 1405, p. 3917 (Rev ed 1937).

where only a part of the space in a building is leased, relate for the most part to the use of the space. The lessor's duties do not end with the execution of the lease. The case of *Whitaker v. Hawley,* 25 Kan 674, 687 (1881) expresses this view as follows: "\* \* \* a lease is in one sense a running rather than a completed contract. It is an agreement for a continuous interchange of values between landlord and tenant, rather than a purchase single and completed of a term or estate in lands."

■ The covenants in the instrument in the present case relate to the continuing obligations of the respective parties. The transaction is essentially a contract.[④] There is no reason why the principle of mitigation of damages should not be applied to it. "\* \* \* [I]t is important that the rules for awarding damages should be such as to discourage even persons against whom wrongs have been committed from passively suffering economic loss which could be averted by reasonable efforts \* \* \*." McCormick, Damages, p. 127 (1935).

■ Lessors as well as contract promisors should be made to serve this salutary policy. To borrow again from McCormick, "the realities of feudal tenure have vanished and a new system based upon a theory of contractual obligations has in general taken its place." He reminds us that in disregarding the contractual nature of modern leases we have "neglected the caution of Mr. Justice Holmes, 'that continuity with the

---

[④] In the very early law the tenant had only contractual rights against his landlord. Through a gradual expansion of the tenant's remedies, his interest eventually was treated as an estate in land. 1 American Law of Property, § 1.11, 3.11 (Casner ed 1952). The transformation of the tenant's interest from contract to property was not designed to benefit the landlord. To hold that he is benefited by absolving him from any obligation to mitigate damages is, as one writer describes it, "an incongruous inversion." Note, 41 Minn L Rev 355, 359 (1957).

past is only a necessity and not a duty.' " Writing in 1925, McCormick predicted that eventually "the logic, inescapable according to the standards of a 'jurisprudence of conceptions' which permits the landlord to stand idly by the vacant, abandoned premises and treat them as the property of the tenant and recover full rent, will yield to the more realistic notions of social advantage which in other fields of the law have forbidden a recovery for damages which the plaintiff by reasonable efforts could have avoided."[5] We believe that it is time for McCormick's prediction to become a reality.

■ It does not seem that the burden imposed upon a lessor in mitigating damages would ordinarily be any greater than that imposed upon promisees of contracts not relating to the occupancy of land. However, if it could be said that it is unreasonable to require the lessor to seek out other tenants,[6] plaintiffs in the present case would not be benefited by that argument because defendant presented a willing and, we may assume, suitable substitute tenant. If defendant had entered into possession and thereafter had offered the landlord a person willing to sublet the premises, plaintiffs under the terms of the "Agreement" could not have refused to accept the new tenant without reasonable grounds for doing so. The situation is essentially the same when the proposed new tenant is offered for the purpose of reducing the tenant's damages.[7]

[5] McCormick, The Rights of the Landlord upon Abandonment of the Premises by the Tenant, 23 Mich L Rev 211, 221-22 (1925).

[6] Cases adopting the majority view sometimes stress the point that the adoption of the mitigation rule would impose an unreasonable burden on the lessor in requiring him to seek new tenants. Landlord's Obligation to Mitigate When Tenant Abandons, 1960 Ill L F 332, 335.

[7] A distinction has been drawn between a tenant's offer of a proposed sublessee and an offer of a proposed substitute, Wohl v.

■■■ Even if we were to perpetuate the distinction between a lease and a contract in the application of the principle of mitigation of damages, we would reach the same result. The agreement in question is a contract to make a lease rather than a lease.[8] At the time the agreement was entered into the office building had not been constructed, and the office which was to constitute defendant's leasehold could not then be identified. Consequently, there was nothing that could constitute the subject matter of a conveyance at that time. Conceding that one may make a present demise of a term to begin in the future,[9] it is difficult to conceive of the present transfer of the title (or a part of it in the case of a lease) when that which is to be transferred has no existence.[10] The analogy to mortgages on after acquired property immediately suggests itself. Such mortgages do not transfer a legal estate or

Yelen, 22 Ill App2d 455, 161 NE2d 339 (1959). While the lessor's acceptance of the sublessee will not operate as a surrender releasing the tenant from liability for future rent, his acceptance of the substitute may, in some states, constitute a surrender of the lease, e.g., Gray v. Kaufman Dairy & Ice-Cream Co., 162 NY 388, 56 NE 903 (1900). In Oregon, however, it has long been the rule that "a landlord may relet for the benefit of an original lessee who has abandoned the premises, and that the act of reletting does not of itself necessarily effect a termination of the lease," Meagher v. Eilers Music House, 84 Or 33, 39, 164 P 373 (1917). Consequently, there is no substantial difference between the instant case and one involving a sublessee insofar as the danger of an unintended surrender is concerned.

[8] The "Agreement" itself contains language indicating the intent to create a contract to make a lease rather than a present lease. Thus paragraph 2 provides that "it is intended that a lease for a period of seven (7) years *shall be entered into* which *shall provide* for renewal * * *," and paragraph 6 states that the signing of the "Agreement" "shall be construed as an *agreement to rent* the space indicated *at such time* as the building is completed." (Emphasis added).

[9] E.g., Becar v. Flues, 64 NY 518 (1876); Johnston v. Corson Gold Mining Co., 157 Fed 145 (9th Cir 1907).

[10] But see The People v. Kelsey, 38 Barb 269 (N Y Sup Ct 1862) which may possibly take a contrary position.

interest; they create only an equitable mortgage.[18] And whether they are regarded as arising out of contract or conveyance,[19] a court of equity should require the plaintiff seeking equity to do equity by making a reasonable effort to avoid damages.

■ Plaintiffs contend that defendant should not now be permitted to argue that the transaction was a contract to make a lease because the case was tried on the theory that the transaction was a lease. We have found nothing in the transcript indicating that defendant treated the instrument in question as creating a lease rather than a contract to make a lease. Neither defendant's pleadings[20] nor his conduct in the course of trial clearly points one way or the other with respect to the character of the transaction. In his motion for a new trial defendant admitted that the question of the character of the instrument was not "squarely"

[18] Straus v. Wilsonian Inv. Co., 177 Wash 167, 31 P2d 516, 518 (1934). See also Gile & Co. v. Lasselle, 89 Or 107, 115-17, 171 P 741 (1918).

[19] Generally the mortgage on after acquired property is recognized in equity upon the ground that the parties have entered into a contract to encumber property later to be acquired. Under this view the rule requiring mitigation of damages would be directly applicable. In some cases the mortgage on after acquired property is treated as a "present manifestation of intention to transfer or create an interest in property immediately upon acquisition of that property in the future." Osborne, Mortgages, p. 85 (1951). Here the analogy is that of a conveyance. But the conveyance would be equitable and a court of equity would certainly feel compelled to require the plaintiff to mitigate damages if it were reasonable to do so.

[20] Plaintiffs' contention with respect to the pleadings is that defendant admitted the allegation of the complaint which termed the "Agreement" a "lease agreement." But nothing appears in the complaint to suggest that a *lease*, rather than an *agreement to make a lease,* was meant by this term. If anything, the complaint, read as a whole, suggests that a contract rather than a lease was being alleged. Paragraph III twice uses the term "contract" in speaking of the "Agreement"; paragraph V refers to the space "agreed to be rented"; and finally, the "Agreement" itself, which readily lends itself to construction as a contract (see note 8 above), is incorporated by reference into paragraph I of the complaint.

presented to the court. But there was nothing to suggest that defendant was not relying upon the theory that the transaction was a contract to make a lease. On the contrary, it might be said that since all but three states have refused to require a lessor to mitigate damages defendant's offer of proof on the point of mitigation indicated that he was proceeding on the assumption that the transaction was a contract only.

The judgment is reversed and the cause is remanded for a new trial.