## GRIGSBY v. WESTERN UNION TEL. CO.

1. There is a very obvious difference between a parol agreement to make a written lease and a parol lease with a further or incidental agreement that it shall be put in writing. In the one case the making of the writing is the subject of the agreement, and only that can execute it; in the other, the subject is the act or fact of present leasing, and its subsequent reduction to writing is incidental only.

2. Whether a parol agreement constitutes an actual lease, or simply an agreement for a lease, must, in general, depend upon what appears to be the paramount intention of the parties.

3. Upon the evidence in this case, *held*, that the agreement constituted a lease, and that such lease was for a term of one year, and not from month to month.

4. Where the agreement or lease was made on the part of appellant by its local agent or manager, and all the circumstances go to show that he

was authorized to make it and the appellant, presumed to have absolute knowledge upon the question, makes no attempt to disprove his authority, the trial court may treat his authority as proved.

5.   But if, upon the evidence, such question was one of fact for the jury, appellant waived its submission to the jury by treating the case as presenting questions of law only, and moving the court to direct a verdict in its favor, and making no claim or request to have the case submitted to the jury.

6.   The court having adopted appellant's theory that the case presented questions of law only, the fact that it decided the law questions adversly to appellant did not, in the absence of an express request to submit, relieve appellant from the effect of his concession that there were no questions of fact in the case.

(Syllabus by the court.   Opinion filed July 18, 1894.)

Appeal from circuit court, Minnehaha county.   Hon. FRANK R. AIKENS, Judge.

Action to recover rent.   Plaintiff had judgment and defendant appeals.   Affirmed.

The facts are stated in the opinion.

*Bailey* and *Voorhees, (George H. Fearons,* of counsel,) for appellant.

An agreement to execute a lease does not constitute of itself an actual lease.   Davis v. Thompson, 13 Me. 209; Baxter v. Browne, 2 Bl. Rep. 973; Doe ex Dem.   Jackson v. Ashburne, 5 T. R. 165; Broomfield v. Smith, 6 East. 530; Morgan v. Bescall, 3 Faulton, 65; Allen v. Bennett, 3 Fauton, 169; Goodtille v. May, 1 D. & E. 735; McGrath v. Boston, 103 Mass. 369.   A mere holding over of a tenant in possession under an agreement for a new lease, constitutes simply a tenancy at will.   Emmons v. Scudder, 115 Mass. 367; Hilcendegen v. Scheisch, 55 Mich. 468; Grant v. White, 42 Mo. 285; Currer v. Gorden, 117 Mass. 260.

*M. Grigsby* and *Davis, Lyon & Gates* for respondent.

The fact that the prior tenancy had been by the year and a contract made for another year the Court should construe this letting into a tenancy for a year.   Taggard v. Roosevelt, 8 How. Pr. 141; Sully v. Murry, 34 Mo. 420; Laughran v. Smith, 75 N. Y. 205.

KELLAM, J. This is an action to recover rent alleged to be due from appellant, as lessor, to respondent, as lessee. From a judgment in favor of respondent, and from an order overruling a motion for a new trial, appellant brings this appeal. The facts seem to be as follows: On July 13, 1888, appellant leased from one Isaac Emerson a part of the building known as the "Emerson Block," in the city of Sioux Falls, for a term ending May 1, 1890, at the monthly rental of $25 per month. Under the lease with Isaac Emerson, appellant occupied the demised premises as a telegraph office, and continued such occupation during the term of the lease. After the expiration of the lease with Emerson, on May 1, 1890, appellant continued in possession of the premises, and for the following two months paid to Emerson rent at the rate of $25 per month. Some time prior to July 1, 1890, respondent became the owner of the Emerson block, and came into possession of the property upon July 1, 1890. Upon July 1, 1890, respondent went to the office of appellant, in Sioux Falls, and signed a renewal of the Emerson lease for one year. This renewal was indorsed upon the back of the Emerson lease, and had been executed by the vice president and secretary of appellant in New York City, under date of May 19, 1890. Subsequently, and upon the same day that he signed the renewal, or upon the next day thereafter, respondent went a second time to the office of appellant, and inquired of the then manager of appellant whether he had yet forwarded the lease to the officers of appellant. The manager replied that he had not yet forwarded it, and respondent then requested to be allowed to erase his name from the renewal, upon the ground that the adjoining office was rented at a larger amount than appellant had been paying, and that appellant should pay $35 per month, instead of $25, as, under the Emerson lease, it had previously paid. Appellant's manager consented to allow respondent to erase his name from the renewal, and, after respondent's signature had been so erased, gave respondent

the address of the superintendent of appellant in Minneapolis, and advised respondent to write to him in regard to the matter.    Respondent, upon July 3, 1890, wrote to the superintendent of appellant, in effect, that he should require $35 per month if appellant should longer occupy the premises.    During the last of July or the first of August, appellant's local manager called respondent into the office, and told him appellant would accept his proposition, and take the premises for a year provided respondent would make certain repairs.    That after examining with said agent the places where said repairs were to be made, respondent agreed to make them, and the said agent then said it was all right,—they would keep the offices for another year,—and on that day paid respondent $35, as rent for the month of July.    That the agent, on that day, on or about the 1st of August, informed respondent that the company always prepared the leases at the home office; that he would notify them of the contract made; and that the leases would come for signature at some time in the future.    That, subsequent to said 1st of August, said agent informed respondent that said leases had come, and that, when he had time, he could come into the office and sign them.    And that afterwards the agent mentioned again that the leases had not been signed, and the respondent again said that he would come in when he thought of it and had time to sign them.    Appellant continued in possession of the premises, paying rent as agreed,—$35 per month,—until the 1st of December, 1890, when they vacated the premises without the consent of respondent.

This statement of facts, conceded or plainly proved beyond contest, should be qualified by saying that appellant claims that the evidence does not show an executed verbal lease, but simply an agreement for a written lease, to be subsequently executed, and that, such lease never having been executed, it never became operative, but the transaction remained an unexecuted verbal agreement for a lease,   We think there is no question as to the legal effect of the evidence.   The testimony

of respondent was that, about the 1st day of July, he notified appellant's local agent or manager that he should require $35 per month rent, instead of $25, as they had been paying the former owner. The agent suggested that he should write the company about it, and gave respondent the address of the super-intendent. That he at once wrote him. The letter was in evidence, and concludes as follows: "Shall therefore require $35 per month if you occupy the premises longer." Shortly after, and about August 1st, the agent called respondent into the office. "He spoke about the letter I had written to the company. He said they would take premises for another year, at $35 per month, provided I would make certain improvements." He further testified: "I never saw the new lease. * * * The agent notified me that it had been sent on by the company for my signature. At the time he paid the month's rent for July, it was the time he showed me through the premises, and pointed out what he wanted done, and said they would take the building for another year at $35 per month on my agreement to make the improvements, and that he would pay one month's rent, which was then due, that the company always prepared the leases in the home office, and he would let me know when it came down for my signature. After that,— I think it was on the street,—he called me one side, and told me the lease was there, and to come over and get it, and I said 'all right; and once afterwards he spoke to me about it and wanted I should come over after the lease. I said, 'I will, the first time I am not busy and think of it.' I never thought anything more about it, and did not go in. * * * I was not present when the rent was paid. He always paid it in the office to the clerk." Respondent gave other evidence in the same line, but it was principally restatements, in slightly differing words, of the conversation between the local agent and himself, and the circumstances connected therewith. It was undisputed that appellant paid rent at $35 per month during its occupation.

We think this evidence shows something more than an agreement between the parties that they would subsequently enter into a written lease. We think it was an agreement taking effect in *praesenti*, as a parol lease. The making of a written lease seems to have been suggested by appellant's agent as a practice of the company, and it is probably correct to say that, after such suggestion, it was contemplated by the parties that the terms of the agreement should afterwards be reduced to writing; but we discover nothing in the evidence indicating that its taking effect was to be conditioned upon or postponed until such writing should be prepared and signed. The language and conduct of the parties indicated that the new arrangement was to take effect at once. There is a very obvious difference between a parol agreement to make a written lease and a parol lease, with a further or incidental agreement that it shall be put in writing. In the one case the making of the writing is the subject of the agreement, and only that can execute it; in the other, the subject is the act or fact of present leasing, and its subsequent reduction to writing is incidental only. In Jackson v. Kisselbrack, 10 Johns. 336, the court said: "None of the cases will be found to contradict the position that where there are apt words of present demise, and to these are superadded a covenant for a future lease, the instrument is to be considered as a lease, and the covenant as operating in the nature of a covenant for a further assurance." See, also, 2 Pars. Cont. 512, and Tayl. Land'. & Ten. § 38, where it is said that, generally, whether an agreement is a lease, or only an agreement for a lease, depends upon "what appears to be the paramount intention of the parties." We are well satisfied from the evidence that the parties to the parol agreement understood and intended that their relation as landlord and tenant and the terms of the relationship should at once become fixed and established by such agreement, and did not depend upon the execution of a further written lease. The effect of such understanding and intention was to make the verbal

agreement an actual operative lease, and not simply an agreement for a lease.

Neither do we think the further contention of appellant tenable that, if the agreement constituted a lease, it was a lease from month to month. Appellant's argument is that respondent's letter to appellant saying. "Shall therefore require $35 per month if you occupy the premises longer," was a proposition to rent by the month at that rate, and that appellant simply accepted the proposition on condition that respondent would make the repairs. While the letter itself does not suggest a renting for a year, it did not deprive the parties of the power to subsequently make such term and terms as they could agree upon. No one can read the testimony of respondent and not understand from it that, if any lease at all was made, it was for a year. His evidence was explicit, unambiguous, and undisputed that appellant's manager agreed, if respondent would make certain repairs, which he then and there assented to and proceeded at once to make, appellant would take the premises for one year, at $35 per month. No other term than one year was talked about.

It is next contended by appellant that it is not shown that appellant's local manager or agent had authority to make the lease. The following facts are in evidence: The local agent gave respondent the address of the superintendent, and suggested that, if he insisted upon an increase of rent, he should write to him. He did so. Shortly after, the agent advised respondent that he had heard from the company, and that, if certain repairs were made, they would take the premises for a year. If he was not authorized to say this, it did not bind the appellant; but, from first to last, his authority in fact has not been denied by appellant. If he did not have it, a word from appellant would have proved it. All the circumstances go strongly to show he was authorized. The silence of appellant upon such question of authority or want of authority, conclusive evidence upon which was peculiarly in its possession, goes

strongly to support the fact of authority. Gates v. Railway Co. (S. D.) 57 N. W. 202.

We do not think that, upon the record presented, there was any question for the jury, but, if there was, it would seem that appellant waived it. It moved the court to direct a verdict in its favor. This was a concession that there was no question in the case but one of law, which it was the duty of the court to decide. The court adopted the very theory which appellant asked it to adopt, and took the case from the jury. That it decided the law question adversely to it ought not to put appellant in position to now assert, as against the ground and theory of his motion, and without any request to have the case submitted to the jury, that there was a question of fact for the jury, and that it was error for the court to grant its motion, and decide the case as a question of law only. In Barnes v. Perine, 12 N. Y. 18, the facts as to this question were similar to those here presented. There the defendant moved the court to direct a verdict in its favor. It overruled the motion, but directed a verdict for plaintiff. In answer to appellant's claim on appeal that the case should have been submitted to the jury, the court says: "But having treated the question as purely legal, and acquiesced in the disposal of them by the court as such, he cannot now be heard to object that facts were involved which should have been decided by the jury." See, also, Winchell v. Hicks, 18 N. Y. 565; Leggett v. Hyde, 58 N. Y. 275. We think appellant presents no sufficient reason for a reversal of this judgment, and it is affirmed. All the judges concur.