Edward N. Dickerson, Respondent, *v.* Sigmund Menschel,
Appellant.

First Department, July 3, 1919.

Contract for lease — alteration in building to be made by lessee —
plans and specifications to be approved by lessor and building
department — bond to be given by lessee after final submission
and approval of plans and specifications — failure to give bond
before approval by building department as breach — counter-
claim — specific performance of contract to execute lease dismissed
where agreement to lease based on contingency which never
happened — changes in plans by building department as obligat-
ing parties — necessity that parties accept changed plans to make
contract operative — measure of damages.

The plaintiff was the owner of a certain building which the defendant desired
to lease for a long term. Alterations were necessary but the exact nature
thereof was not stated, and it was agreed that plans and specifications
were to be secured by the defendant, and he was to alter the building
subject to the plaintiff's approval, and upon the completion of the altera-
tions the plaintiff should lease the premises for a stated long term subject
to renewals. The plans and specifications were to be submitted to the
plaintiff within a specified time and were to be thereafter filed with the
building department of the city of New York. The defendant was to
begin work on the alterations immediately, but not until the plans were
approved by the building department. It was further agreed that the
work was to be done in accordance with the plans and specifications
" as finally submitted and accepted " by the plaintiff and approved by
the building department and that " immediately after the final sub-
mission of the plans and specifications and their approval " by the plain-
tiff the defendant should furnish a bond conditioned for the faithful per-
formance of the contract. The plans were approved by the plaintiff but
the building department failed to approve them and made substantial and
material alterations therein which would nearly double the cost. The
defendant refused to give the bond stipulated for, on the ground that
the plans had not been approved by the building department, and this
constituted the alleged breach of the contract.

*Held,* that the bond was not required to be furnished until it was definitely known that the parties had materially agreed with respect to the work to be performed, and by the approval of the building department, it was known that the performance thereof was authorized, and, therefore, the failure to give the bond did not constitute a breach of the contract as the time when the giving thereof was necessary never arrived.

A counterclaim for specific performance for the execution of the lease was properly dismissed for the reason that the plaintiff never approved the plans and specifications as altered and approved by the building department and never consented to the performance of the work in accordance therewith.

The parties by filing plans with the building department did not thereby become obligated to make the improvements according to the changes and alterations made by that department.

The parties not having accepted the plans and specifications as altered by the building department the defendant was not entitled to a lease nor was he required to furnish a bond.

*It seems,* that the same rule of damages is applicable whether the action for the breach of such a contract be brought by the owner or by the contemplated lessee, and that they are to be measured by the value of the contract which would entitle the owner to recover the difference between the amount of the rent he was to receive under the lease, if made, plus the value of the improvements at the time he would become the absolute owner thereof, and the fair and reasonable rental value of the premises improved as contemplated for the period plus the amount he was to expend on the improvements.

APPEAL by the defendant, Sigmund Menschel, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 6th day of August, 1918, upon the verdict of a jury directed by the court, and also from an order entered in said clerk's office on the 29th day of June, 1918, denying defendant's motion for a new trial made upon the minutes.

*Samuel Seabury* of counsel [*Henry S. Mansfield,* attorney], for the appellant.

*DeLancey Nicoll* of counsel [*Joseph Walker Magrauth* with him on the brief; *Nicoll, Anable, Lindsay & Fuller,* attorneys], for the respondent.

LAUGHLIN, J.:

This is an action for damages for the breach of a contract executed in writing by the parties on the 22d day of March,

1916. The plaintiff was the owner of premises known as Nos. 62–64 East Thirty-fourth street, in the borough of Manhattan, New York, upon which there stood certain buildings which are neither described by the contract nor by the evidence. The defendant, evidently, was desirous of obtaining a long term lease of the premises, but to conform the building to his requirements, which likewise are not stated, necessitated material alterations thereof and probably additional construction. The agreement provided that the defendant should " alter the said premises in accordance with certain plans and specifications to be prepared by an architect " to be selected by him, subject to the approval of the plaintiff, and that upon the completion of the alterations the plaintiff should lease the premises to the defendant for a period of twenty-one years from the date of the delivery of the lease, which should be in the form of a blank lease attached to the agreement and provided, among other things, that if at the expiration of the period there should be standing on the premises a building erected by the defendant " covering substantially all of said premises " there should be separate appraisals of the value of the fee and of the " buildings standing on the said lots," and that the plaintiff at his election should either pay the defendant the appraised value of the building, less the amount advanced by the plaintiff towards its construction pursuant to the said contract, or grant the defendant a renewal of the lease for a like period for a rental equal to five per cent of the appraised value of the fee, which rental, however, was not to be less than that provided for by the original lease, and it contained like alternative provisions for the payment to the defendant of the value of the building or a second renewal of the lease at the expiration of forty-two years. The parties, evidently, had not agreed with any degree of definiteness concerning the alterations or construction work to be made by the defendant under the agreement before he was to become entitled to a lease of the premises, and by the agreement the nature and the extent of the alterations were left subject to the mutual agreement of the parties in the future. They doubtless expected to agree with respect thereto, but, as will be seen presently, they never did. The agreement provided that plans and speci-

fications for the alterations were to be drawn by the architect in co-operation with the defendant and were to be submitted to the plaintiff for approval within 120 days from the date of the agreement, and that when so approved the plans and specifications were to be filed with the building department of the city of New York; that immediately after the filing of the plans and specifications bids for the proposed work should be obtained by the defendant, and by the plaintiff, also, if he so desired, and submitted to the architect, and that the contract " for the alteration or construction work " should be awarded to the lowest responsible bidder, or to the lowest bidder furnishing a surety bond for faithful performance; that the defendant should begin the work of alteration and construction " immediately, and when called upon so to do " by the plaintiff, but that the plaintiff should not give him notice to commence the work " until the building or buildings be vacated by the present tenants and the plans are approved by the Building Department of the City of New York;" that the work should be done in accordance with the plans and specifications " as finally submitted to and accepted " by the plaintiff and approved by the building department; that " immediately after the final submission of the plans and specifications and their approval " by the plaintiff, the defendant should furnish the plaintiff with a bond of the National Surety Company, or of a like company, in the sum of $3,000 conditioned for the faithful performance of the contract; that the defendant should pay the first $5,000 to the contractors and that thereafter the contractors should be paid in equal amounts by the parties with a proviso limiting the whole amount to be paid by the plaintiff to the sum of $20,000. The contract contained no specification as to the time within which the work was to be performed, but provided that the lease should be executed when the architect certified that the work had been performed in accordance with the plans and specifications.

Plans, without specifications, were prepared and submitted by the defendant to the plaintiff for approval. He approved them conditionally by a letter under date of July 6, 1916, in which he stated " they seem all right and I approve them but of course the specifications have not yet been submitted to me, as

provided in our agreement. Of course all contracts which will be made covering this work will have to provide that the contractors furnish bonds satisfactory to me guaranteeing me against any possible mechanics' liens or other liens and claims." To this the defendant replied through his attorney interposing no objection to the suggestion with respect to the provision to be inserted in the contract for the construction work obligating the contractors to furnish bonds with respect to the liens, but stated that the architect would be instructed to prepare the necessary specifications at once, and that it was the defendant's understanding that the plaintiff would allow defendant a reasonable time within which to prepare and submit the specifications even though it be beyond the period prescribed therefor in the contract. The plaintiff replied to this on July tenth stating that he had not agreed to any extension of time, and that if he should it would be in the form of a written extension signed by him or his secretary with the time definitely stated therein. The time for the submission of the plans and specifications expired on the twenty-second of July. It does not appear when the specifications were submitted but on August third the plaintiff wrote the defendant that the specifications submitted to him seemed to be all right *with the exception* that they should contain a clause requiring the contractors to furnish a bond with respect to the liens as already stated and in which he stated that the defendant had verbally agreed to insert such a clause, and in effect that with the addition of such a clause he approved the plans and specifications, and he called upon the defendant to furnish promptly the $3,000 bond required by the contract. Again on the fourteenth of August he wrote the defendant demanding the bond and drawing his attention to the fact that more than ten days had elapsed since it should have been furnished and in it he asked for a copy of the *additional clause* to be inserted in the specifications as agreed. On the first of September he again wrote the defendant stating that he was in default with respect to furnishing the bond and that he would hold the defendant strictly liable for damages for his failure to proceed in accordance with the agreement. The bond not having been furnished, the plaintiff placed the matter in the hands of his

attorney, who, on September twelfth, wrote the defendant drawing his attention to the fact that he was long in default in furnishing the bond and stating that unless it was furnished immediately an action would be brought. The representatives of the parties had, in the meantime, various interviews at which the defendant insisted that he should not be required to furnish a bond until the plans and specifications were approved by the building department. The building department failed to approve the plans and specifications as filed and made very substantial and material alterations in the plans and specifications which would increase the cost of work from $45,000 to $85,000 and approved the plans and specifications as so modified on the twenty-eighth day of September. The clause which the plaintiff had insisted upon was not inserted in the specifications. Thereafter there were other interviews between the representatives of the parties at which, according to the testimony adduced by the plaintiff, the defendant and his representative stated that he was unable to proceed with the contract on account of the increased cost of the work according to the plans and specifications as approved by the building department, and at which, according to the evidence adduced by the defendant, obstacles and delays he was encountering in obtaining such a small bond were explained to the plaintiff or to his representative. The defendant claims that on the fourth of November he obtained the promise of a surety company to execute a bond for him on condition that he deposit, as security therefor, corporate stock of the city in one-half of the amount, and that he so notified the plaintiff. The plaintiff, however, determined to bring this action for a breach of the contract, and claims to have endeavored to make personal service of the summons and that being unable so to do he obtained an order for substituted service. The order is not in the record but it was shown that a copy of the summons was left with the wife of the defendant at his residence on the eighth day of November. On that day the defendant procured the execution of the bond by a surety company and claims to have tendered it to the attorney for the plaintiff on the following day, and that on the eleventh day of November the defendant entered a voluntary appearance in the action. Notwithstanding the

commencement of the action there were negotiations between the parties for some months thereafter with a view to carrying out the contract with some modifications, but they were unable to come to an agreement.

The breach of the contract charged in the complaint is the failure of the defendant to file the $3,000 bond, and it is alleged that the defendant had declared his inability to perform the contract and general damages are demanded in the sum of $325,000. The complaint proceeds upon the theory that it was the duty of the defendant to furnish the bond immediately upon the approval of the plans and specifications by the plaintiff and before they were approved by the building department; and it contains no allegation with respect to the approval of the plans and specifications by the building department. It was verified on the ninth of October, which was only a few days after such approval by the building department. The defendant interposed a counterclaim for the specific performance of the contract *with respect to the execution of the lease*, alleging due performance on his part and a tender of the $3,000 bond, and that the plaintiff refused to accept the same and thereby waived the requirement of the contract with respect to the bond and refused to permit the defendant to proceed with the alterations and thereby waived the provision of the contract in regard to the architect's certificate that the work had been performed in accordance with the plans and specifications as a condition precedent to the execution of the lease. The plaintiff replied to the counterclaim and the issues raised by the counterclaim and the reply were tried at Special Term and the counterclaim was dismissed, with costs. On the trial the court found, among other things, that the defendant was guilty of a breach of the contract in failing to file the bond for $3,000 within the time required by the contract or within a reasonable time thereafter, and that the plaintiff did not waive such breach or failure. Those findings and the legal conclusions based thereon are, I think, erroneous. It cannot be that the parties contemplated that a bond was to be furnished for the faithful performance of the work until it was definitely known that the parties had materially agreed with respect to the work to be performed and by the approval of the

building department it was known that the performance thereof was authorized. The court also found that the plans and specifications as agreed upon between the parties involved an expenditure of approximately $45,000, but as changed and approved by the building department they called for an expenditure of approximately $85,000; that the plans and specifications as changed by the building department were never submitted to or approved by the plaintiff; that the authorized agent of the defendant, on several occasions, between the 3d day of August, 1916, and the 8th day of November, 1916, informed the plaintiff's authorized agent that the defendant could not and would not proceed with the making of the alterations, and that no bids were ever obtained by the defendant for the alterations. These findings are amply sustained by the evidence.

The learned counsel for the appellant contends that the court erred in dismissing the counterclaim and should have decreed specific performance to the extent of requiring the execution of the lease freed from any obligation on the part of the defendant to make any expenditure for alterations. We do not deem it necessary further to discuss the evidence relating to the issues presented by the counterclaim and reply. Counsel for the plaintiff in support of the decision dismissing the counterclaim contends that in no event could specific performance be decreed for the reason that the plaintiff never approved the plans and specifications as altered and approved by the building department and never consented to the performance of the work in accordance therewith. The decision could be sustained on the other grounds but I am of the opinion that this point is unanswerable, and that it is fatal both to the defendant's right to recover on the counterclaim and to the plaintiff's right to recover damages. There is nothing in the contract to indicate that the parties apprehended that the building department would make any material alterations in the plans and specifications which they had agreed upon, but they realized that the plans required the approval of the building department. They did not intend by the contract to confer authority on the building department to extend their respective contractual obligations. It was not competent for the building department to bind them by

any alterations in the plans and specifications filed. The plans and specifications were filed *for approval or rejection* by the building department. One who files plans for improvements with the building department does not thereby become obligated to make the improvements according to the changes and alterations that may be made by the building department which may, as in the case at bar, double or nearly double the contemplated expenditures. The so-called changes and alterations made by the building department were made only for the purpose of enabling the interested parties *to know what the building department would require* as a condition authorizing the contemplated alterations. The action of the building department, therefore, constituted a refusal on its part to approve the plans and the specifications as agreed upon by the parties. It then remained for the parties to negotiate further, and neither would longer be bound by the contract, if acting in good faith, and for reasonable cause he refused to accept the plans and specifications as altered to meet the requirements of the building department. On the one hand the plaintiff was not obliged, as between him and the defendant, to have the buildings upon his land changed or to have new buildings or construction work erected thereon in any form or manner that did not meet with his approval, and on the other hand the defendant, who was under no obligation by his contract to expend any specified amount in making alterations and in construction work, was under no obligation to accept or approve the plans or specifications as amended by the building department, thus materially increasing the burden which he was to assume. The parties not having accepted the plans and specifications as altered by the building department, the defendant was not entitled to a lease nor was he required to furnish the bond.

If the plaintiff were entitled to recover damages the verdict could not be sustained for it was directed for the difference between the amount of the rental the defendant would have been obliged to pay under the lease and the amount to be received by the plaintiff under a materially different lease of the premises executed to another party on the 27th day of February, 1917, for a possible period of twenty-one years, but for a definite period of only five years, and which pro-

vided for alterations involving an expenditure by the tenant of $24,291.46, but no expenditure by the plaintiff. The parties had not entered upon the relation of landlord and tenant. Although it is not necessary to decide the point, it may be said that logically it would seem that the same rule of damages is applicable whether the action for the breach of such a contract be brought by the owner or by the contemplated lessee, and that they are to be measured by the value of the contract which would entitle the owner to recover the difference between the amount of the rent he was to receive under the lease, if made, plus the value of the improvements at the time he would become the absolute owner thereof, and the fair and reasonable rental value of the premises improved as contemplated for the period plus the amount he was to expend on the improvements. (See 16 R. C. L. 559–560; *Taylor* v. *Bradley*, 39 N. Y. 129; *Neal* v. *Jefferson*, 212 Mass. 517; *Driggs* v. *Dwight*, 17 Wend. 71; *Mack* v. *Patchin*, 42 N. Y. 167; *Kingsley* v. *Siebrecht*, 92 Maine, 23; *Massie & Rather* v. *State Nat. Bank*, 11 Tex. Civ. App. 280. See, also, note, 53 L. R. A. 105.)

I am of the opinion, however, that the defendant's motion to dismiss the complaint should have been granted for the reason already stated. Counsel for appellant does not so contend, doubtless for the reason that he would thereby waive the counterclaim. But the point is presented by the record and must be decided. No recovery of damages could be had by plaintiff without showing that the minds of the parties met with respect to the approval of plans and specifications under which the work could be done under the law and this would require an allegation and proof that the plans and specifications as approved by the parties were approved by the building department or were such that under the law the building department could be compelled to approve them. In lieu of the findings and conclusions of law made at Special Term with respect to a breach of the contract by defendant in failing to give the bond and to there having been no waiver of such breach, which are reversed, there should be inserted appropriate findings and conclusions in accordance with these views.

It follows that the judgment and order, in so far as it dismisses the counterclaim, should be affirmed, with costs as

allowed at Special Term, and that the complaint should be dismissed, with costs to the appellant of the jury trial and of the appeal.

CLARKE, P. J., SMITH, MERRELL and PHILBIN, JJ., concurred.

Judgment, so far as it dismisses counterclaim, affirmed, with costs as allowed at Special Term, and complaint dismissed, with costs to appellant of the jury trial and of the appeal. Order to be settled on notice.