**GARY KILBRIDE, Plaintiff**

v.

**SALLY WILSON, Defendant**

Civil No. 171-69

Municipal Court of the Virgin Islands
Div. of St. Thomas and St. John

October 19, 1970

ROGER CAMPBELL, Attorney, *for the plaintiff*

JAMES A. RICHARDS, Attorney, *for the defendant*

MICHAEL, *Judge*

### OPINION

This is a suit by plaintiff against the defendant on his first count for the sum of $325.00, "lent by plaintiff to defendant on August 22, 1969", and on the second count for "$325.00 for money had and received by defendant from plaintiff on August 22, 1969."

The defendant denies both counts and counterclaims in the sum of $565.00, alleging that plaintiff rented certain premises from defendant for $325.00 per month for a period of one year on an oral lease arrangement, agreeing to pay the first and last months' rental, and after receiving plaintiff's down payment of $325.00, defendant turned

down several applicants; that plaintiff called defendant in September, stating he had changed his mind, and that defendant could not rent the house until December 8, 1969.

From the evidence the following facts are found:

On August 22, 1969, the plaintiff went with the defendant to see a house defendant had advertised for rent. Upon seeing it, plaintiff expressed interest, but wanted his wife to see it, which they did later that day. Upon seeing it, both seemed to like it and in their discussion plaintiff requested permission to put a rail around the gallery because they had small children, to which defendant agreed. Plaintiff asked if they could use their own washing machine, which request the defendant did not grant because of lack of space and problem of water. Plaintiff volunteered to make a shelter on one side of the house and take care of water problems. Defendant did not agree to that. With respect to the stove which the defendant had in the apartment, defendant stated that it was old and the oven not in good shape, but if it was not satisfactory, she would furnish a new one.

The house which was being discussed by the parties was occupied by the defendant, but it was agreed that the lease would be for a year and it would be ready for occupancy September 16, 1969, the date plaintiff was to take possession. The apartment was ready for that date.

During their discussion defendant received a telephone call from someone apparently interested in the apartment. Subsequently, plaintiff made out a check in the amount of $325.00, the monthly rental advertised, and delivered it to the plaintiff.* Upon receiving the check the defendant requested the last month's rent as security, which plaintiff promised to pay upon moving in. Defendant thereupon delivered to plaintiff a document containing terms of a release, which plaintiff promised to incorporate in the lease

---

* Should probably read ". . . delivered it to the defendant."

he had volunteered to prepare. Plaintiff requested permission to start work on the rail before moving in, which permission was granted by the defendant.

After all of the discussion and before he left, plaintiff informed the defendant she did not have to show the house to the person spoken to on the telephone, because "we are going to take it."

On or about September 6, 1969, prior to the date of occupancy, plaintiff informed defendant he was not taking the house. Upon receiving that information defendant re-advertised and reregistered the house with brokers, but was unable to rent it before December 8, 1969.

The question of law which the case presents is whether the parties had entered into a parol agreement to make a written lease, or a parol lease with a subsequent reduction to writing. If the former then the agreement was one to make a lease; if the latter, then it was a parol lease with subsequent reduction to writing. Grigsby v. Western Union Tel. Co., 59 N.W. 734; Engle v. Heier, 173 N.W.2d 454 (1970).

Citing 49 Am. Jur. 2d § 18 in his memorandum of law, plaintiff states:

*"There is a marked distinction in both the rights and liabilities of the parties between a lease and a mere agreement for a lease. The question whether an agreement is a lease or an agreement for a lease depends upon the intent of the parties, as manifested by that agreement. As a general rule, where the agreement contemplates the execution of a formal lease at a future time, especially where its future execution is conditional, the agreement is one for a lease, and not a lease itself."*

■ ■ The court is in agreement with the distinction above cited and emphasized, but concludes that it was the intention and understanding of the parties when they left each other that they had entered into a parol lease, which would subsequently be reduced to writing. See Engle v. Heier and Grigsby v. Western Union Tel. Co., supra.

133

The very statement of the plaintiff to the defendant that "you don't have to show the house again this afternoon because we are taking it" is conclusive of the meeting of minds and intention of the parties that is, 1) that plaintiff was leasing the house for a year at the monthly rental of $325.00, to begin September 16, 1969; 2) that plaintiff would incorporate the release in the lease he had volunteered to prepare; 3) that plaintiff had permission to place the rail, even before he moved in, and 4) that he would pay the security of $325.00 upon moving in.

Whether or not defendant did show the house to someone that afternoon is not clear. Even if she did, however, it was with a view to minimizing damages in the event the defendant* did change his mind, which he afterwards did.

█ It is the holding of the court that anything the parties may have discussed during the time they were together other than the above, such as the maid, the washer, etc., or any discussion had between the plaintiff and his wife after the agreement had been reached, did not change the parol lease to an agreement for a lease.

It will be noted that the third sentence of the section quoted above from C.J.S. states that "As a general rule, where the agreement contemplates the execution of a formal lease at a future time, *especially when its future execution is conditional,* the agreement is one for a lease, and not a lease itself.". . .

Nowhere in the evidence after the plaintiff informed the defendant that he was taking the house was there any conditionality, expressed or implied, that its taking would depend upon the signing of a lease or consultation with anyone.

In answer to a question put to plaintiff by his attorney concerning consulting with someone about the release of

---

* Should probably read " . . . in the event the plaintiff. . . ."

liability which he told the defendant would be incorporated in the lease, the plaintiff stated that "my wife and I discussed it later", meaning, after the agreement had been made. At another time he stated, "There was no other conversation regarding the release."

■ The evidence shows that plaintiff breached the parol lease entered into by informing defendant he was not taking the house. Replying to a question put by his attorney as to his reason for not preparing the lease he stated "because after thinking about it for two weeks, thinking about the house and open gallery and not being able to bring our washing machine, we just decided we didn't want this house and we called Mrs. Wilson and told her we rather not take the house." By this reply it is evident that the plaintiff was aware as to what was agreed upon by the parol lease, but he just changed his mind.

■ Plaintiff argues in his memorandum of law that defendant did not put in any evidence that she had suffered any damages, as it was the first time she had attempted to rent the house, and therefore two weeks delay was not grounds for damages.

It makes no difference whether it was the first or last time that the premises were leased or offered for lease. After an agreement had been reached the relationship between the parties became the same, and any breach by the defendant is answerable, either in the rent the defendant was to pay, or otherwise, depending upon the facts of the case. Were it otherwise, every landlord offering a house for rent for the first time would always be at a disadvantage.

■ As "making entry upon or taking possession of the demised premises is not a general obligation of the lessee under the substantive law of landlord and tenant relationship" (see 49 Am. Jur. 2d § 229), it appears that the plaintiff in this case, having breached his promise to take possession on a date certain, and having failed to pay rent,

135

is liable for full amount of stipulated rent, if plaintiff can show there is no market for leasehold. Kulm v. Coast-to-Coast Stores Central Organization, Inc., 432 Pac.2d 1006 (1967).

In this case the defendant, the counterclaimant, has shown there was no market for the leasehold until December 8, 1969. Therefore, the defendant is entitled to damages in the amount of the stipulated rent during the time there was no market for the leasehold.

Although "[In] an action to recover for breach of an agreement to enter into a lease is in damages, and the true measure is between the stipulated rental and the rental which, through the exercise of reasonable diligence was able to obtain. . ." (Kulm v. Coast-to-Coast Stores Central Organization, Inc., supra), in the case before the court the measure of damages is the stipulated rent during the time defendant was unable, although having exercised reasonable diligence, to rent the premises.

Whether the relationship between the parties in *this* case be termed lessor and lessee, landlord and tenant, or even a proposed lessor and lessee, the court would construe the pleadings and evidence as adaptable to any, as the element of damages resulting from plaintiff's breach would be similarly arrived at. 49 Am. Jur. 2d § 23; Dickerson v. Menschel, 177 N.Y.S. 376; H. S. & D. Invest. Co. v. McCool, 9 Pac.2d 809; Jefferson Realty v. United States Rubber Co., 222 So.2d 738 (1969).

From the above discussion the complaint of the plaintiff will be dismissed and judgment in damages entered in favor of the defendant upon her counterclaim in amount of stipulated rent for the period September 16, 1969 to December 8, 1969, minus the amount of $325.00 paid by plaintiff at the time the lease agreement was entered into.

Let judgment be entered in conformity with this opinion, with costs and counsel fees to the defendant.