AUGUSTUS ZABRISKIE, TRUSTEE, &c., v. JOHN SULLIVAN.

Submitted July 8, 1910—Decided November 5, 1910.

1. The rule that a tenant will not be permitted to deny his landlord's title, estops the tenant from showing that the lease is imperfectly executed; it extends to a tenant holding over, is applicable to every species of tenancy including that at sufferance, and may be invoked in an action of debt, *assumpsit*, covenant or ejectment.

2. At common law a tenant, from year to year, was charged with the reciprocal duty of giving his landlord a six months' notice of his intention to vacate, in order to rid himself of the obligations of a tenant.

3. The reciprocal nature of this duty has not been altered by statute and still prevails in this state as at common law.

On appeal from the First District Court of Jersey City.

Before Justices GARRISON, SWAYZE and VOORHEES.

For the appellant, *James R. Bowen.*

For the respondent, *Herrmann & Steelman.*

The opinion of the court was delivered by

VOORHEES, J. This suit was brought upon a written lease to recover rent for the months of November and December, 1909, at $70 per month. Judgment was rendered for the plaintiff. The lease was executed by Augustus Zabriskie, trustee, under the will of Margaret Ginocchio, whereby he leased to the defendant certain premises in Jersey City for "one year from November 1st, 1907, at the yearly rent of $840, to be paid monthly in advance, *i. e.*, seventy dollars on the first of each month." There was a covenant on the part of the landlord for quiet enjoyment, and one on the part of the tenant to pay the rent as specified and to surrender the premises in good condition at the expiration of the term.

The case shows that the defendant took possession at the commencement of the term and remained in possession until October 30th, 1909, paying the rent reserved during the whole period. On September 30th, 1909, the defendant notified the plaintiff of his intention to quit on October 31st, 1909, which the landlord promptly informed him was an insufficient notice in point of time, and that he would not be released from the tenancy.

The first contention on the part of the appellant is that the plaintiff as trustee, under the provisions of the will creating him a trustee, and which gave him "full power to dispose of and sell all my real estate, provided they (the executors) obtain the written consent of such of my children as may be living," was without authority to execute a lease to the defendant, except upon such consent, because, it is asserted, a lease is a disposition of real estate. *Shimer* v. *Phillipsburg,* 29 *Vroom* 506.

Assuming the fact of non-consent, which does not affirmatively appear, and that an interpretation of the entire will would preclude the plaintiff, who took the residuary estate in trust to pay the net income or rent of the property to the children, from demising it without the children's consent, yet it is not perceived how the defendant, after entering into a formal lease with the plaintiff under which he has continued in possession, all the while paying the rent reserved, can deny his landlord's title. *Howell* v. *Ashmore,* 2 *Zab.* 261. This rule also estops the tenant from showing that the lease is imperfectly executed; it extends to a tenant holding over, is applicable to every species of tenancy including that at sufferance, and may be invoked in an action of debt, *assumpsit,* covenant or ejectment. See *Tayl. L. & T. (7th ed.),* § 705 *et seq.,* where the rule is stated and the cases are collected. But we are of opinion that the trustee not only had the power to rent the property, but that such was his duty, imposed by the will, in the administration of the trust.

The next point urged for reversal is, that the theory that a tenant is obliged to give notice of his intention to vacate has no support in the common law, and the statute does not re-

quire it.  In the leading case in this court (*Steffens* v. *Earl,* 11 *Vroom* 128), Mr. Justice Reed says: "The habit of giving and requiring reasonable notice, in cases of tenancies, not for a single term, but for recurring periods, which reasonable notice, when the periods were from year to year, was, according to Lord Ellenborough, very early held to be six months, was probably by a custom equally as old, in tenancies for less periods, established as now stated by the books."

The common law rule undoubtedly was, as stated in that case, that, in tenancies from year to year, landlords were obliged to give, and might require six months' notice in order to end them.

The appellant indeed admits that, at common law, a tenant was charged with the reciprocal duty of giving his landlord a six months' notice of his intention to vacate, if he had been permitted to hold over, in order to rid himself of the obligations of a tenant, citing *Doe* v. *Spence,* 6 *East* 120.  The reciprocal nature of this duty has not been altered by statute, and still prevails in this state as at common law.  It has been so declared in *Hanks* v. *Workmaster,* 46 *Vroom* 73; *Mitchell Fertilizer Co.* v. *Armour,* 49 *Id.* 118.

But the appellant further contends that the common law doctrine has not been recognized in this state because the statute (*Gen. Stat., p.* 1921, § 29), reducing the notice from six to three months, applies only to the notice by the landlord, and is silent regarding that to be given by the tenant.  We fail to see the force of this reasoning.  This, however, makes against the tenant in the present case, for, as has been pointed out, at common law, a six months' notice was required on the part of the tenant, and, if the statute has not shortened it, then it still remains six months.  The fact remains that only a month's notice was given, and that was insufficient.

The premises having been vacated by the tenant, it became the duty of the landlord to rent them in diminution of the damages of the tenant.  This is clearly so under the cases of *Dolton* v. *Sickel,* 37 *Vroom* 493; *affirmed,* 39 *Id.* 731, and *Meeker* v. *Spalsbury,* 37 *Id.* 60.

The case shows that the tenant, upon sending the key to the

landlord, was immediately notified that it was received under protest and merely for the purpose of preserving the property and attempting to rent the same for the tenant's benefit. The reparation of the premises by the landlord was also for the benefit of the tenant, for it relieved him of his duty to repair and increased the likelihood of securing a tenant. The finding of the District Court under these circumstances that there was no eviction, being one of fact, is not open for review here, there being ample foundation to support it.

The judgment will be affirmed, with costs.