G. F. REINKING v. W. S. GOODELL and F. W. GOODELL, Appellants.

Negotiable Instruments: TAXATION OF ATTORNEY FEES. Where promissory
1    notes were executed at different times and for different amounts, which provided for attorney fees in case of suit, the holder was entitled to have the attorney fees taxed on the notes as separate instruments, although sued in the same action.

Landlord and Tenant: LEASE: CONSTRUCTION. Under a lease of rice
2    land providing for a stipulated rental per acre for all land covered by the lease and harvested, the land utilized for levees, consisting of narrow strips of an elevation of about six inches and dividing the tract into small, irregular areas, for the purpose of retaining water for irrigating the land, were a part of the acreage harvested, within the meaning of the lease, and the owner was entitled to rent therefor, there being nothing in the lease to the contrary.

Same: ACTION FOR RENT: COUNTERCLAIM: EVIDENCE. In this action
3    for rent, in which the tenant counterclaimed for breach of contract by the landlord to make repairs, correspondence between agents of the owner concerning the material and character of the plan for repairs, which correspondence was commenced before the signing of the lease, and correspondence of one of the owners agents with other parties concerning the difficulty in procuring the necessary material for the repairs, was admissible, even though the owner was not bound by the terms of the lease to make the repairs within a definite time, but only within a reasonable time.

Same. Where a lease did not require the landlord to make certain re-
4    pairs within any definite time, conversations between the tenant and the landlords agent, which were had before the lease was made, as to the necessity of making the repairs before a certain date, were not admissible in an action for rent in which the tenant counter-

claimed for failure to make the repairs within the required time; as it added a new condition to the lease.

Same: COVENANT TO REPAIR: BREACH: LIABILITY. The lease in the instant case of irrigated lands, providing for the making of certain repairs to the irrigating plant, is held to contain no covenant to complete the repairs by any fixed time; and therefore the rule that the covenanting party assumes the risk of injury resulting from his failure to complete his contract has no application.

Same: INSTRUCTIONS: PREJUDICE. Where there was no evidence that the party employed to repair the plant was negligent in prosecuting the work after the material was secured, any error in the instructions assuming that he was the party selected by both the landlord and tenant to make the repairs was not prejudicial.

Same: COVENANT TO REPAIR: BREACH: EVIDENCE. Where the controverted question was whether the repairs were made within a reasonable time under the circumstances known to both the landlord and tenant, evidence that the tenant made no complaint that the work was not so completed, until after the crop had matured and until expiration of the lease, was admissible, as well as evidence of the repairs that were in fact made.

Same: COVENANT TO REPAIR: BREACH: DAMAGES. Where one is threatened with injury, the result of the default of another, he must prevent such damage if he can do so with reasonable diligence and at slight expense. So where a landlord proceeded to make certain repairs required by his lease, and in a general way made such repairs within a reasonable time, upon his failure to complete some matter in connection therewith not specifically called for by the lease, and of which the tenant himself knew and could have remedied with reasonable diligence and slight expense, it was his duty to do so; and failing to perform such duty he was in no position to recover of the landlord the full damage suffered by reason of such neglect.

Same: EVIDENCE: PREJUDICE. Where no substantial damages were allowed in an action for rent, to which the tenant counterclaimed for damages because of failure of the landlord to make repairs within a reasonable time, the rulings as to the admission of evidence which could only have affected the measure of recovery and not the right, were not prejudicial even if erroneous.

*Appeal from Polk District Court.*—HON. HUGH BRENNAN,
Judge.

WEDNESDAY, DECEMBER 13, 1911.

ACTION to recover the agreed rental on a tract of rice land in Texas and the amount due on two promissory notes for money advanced by plaintiff to defendants. There was a counterclaim for breach of contract on the part of plaintiff in failing to repair a pumping plant on the premises and the retaining walls protecting the same, resulting in damages to the defendants in the loss of a portion of the crop and loss of time, labor, and money in preparing and procuring seed for such crop. The case was tried to a jury, and a verdict was returned for plaintiff in the sum of $9,704.56, which was substantially the full amount claimed by plaintiff.—*Affirmed.*

*Guernsey, Parker & Miller,* for appellants.

*Hunn & Jones,* for appellee.

McCLAIN, J.—The appellants question not only the action of the court and jury resulting in the substantial disallowance of defendants' counterclaim, but also in two respects the amount of recovery allowed on plaintiff's claim.

The facts necessary to an understanding of the questions involved in the determination of the appeal, as shown without dispute in the record, were as follows: Plaintiff, being the owner of a tract of rice land of about 1,200 acres located adjacent to the town of Garwood in Texas, and abutting upon the Colorado river, on the 31st day of December, 1907, leased said land including the use of the pumping plant consisting of the machinery, flume, canals, and laterals then constructed and certain buildings which need not here be described, to the defendants for the year 1908 at the agreed rental of $5 per acre for all lands covered by the lease and harvested; the acreage to be determined by a survey made at or about the time the crop was harvested therefrom. Plaintiff agreed in said lease to loan the defendants money not to exceed $5,000

in amount to be used by them in the operation of the plant and raising of the crop. It is agreed that under the stipulation for advances money was loaned to the defendants represented by two certain promissory notes executed at different dates in the sums of $2,500 and $1,000, respectively. It appears that at the time of entering into said contract of lease the pumping plant and appliances were understood by both parties to be out of repair, and it was further understood that the plant needed additional protection against the possible encroachments of the river at times of high water, and that repairs and improvements were contemplated by plaintiff to be made according to plans already submitted to plaintiff by one C. G. Patton, an engineer. The plaintiff therefore covenanted in the lease "to build a protection to the bank by C. G. Patton, who is to put the same in and repair the boiler walls (and) to repair the pump and rebore the pulley on the shaft." It further appears that the pumping of water on the land by means of the pumping plant was essential to the raising of a crop of rice, and that water was usually necessary about four weeks after the rice was planted; the period of planting extending from the latter part of March until the first of June, depending upon the circumstances and the season. The first planting was in fact done March 29th, and prior to April 20th the boiler walls had been rebuilt and the machinery put in running order under the supervision of one of the defendants. Work on the additional protecting walls to guard the suction pipe of the pumping plant, a twenty-four-inch pipe projecting beyond the river bank about fifteen feet, was commenced by Patton in February. On account of lack of material to finish it, this work was suspended the last of March and resumed the middle of April; but the completion of the work was delayed by successive floods in the river until after the 5th of May. By the 20th of that month the suction pipe, which during the progress of the work of repair was found to have sagged and opened, was repaired and connected and pumping commenced. On account of the

high water, there was a suspension of pumping after this date; but the protecting walls stood, and it does not appear that the bank was washed out by the water. The alleged damage on which the counterclaim is based consisted in the shortage of the crop on the leased premises, due to the failure of the pumping plant to supply water for about one month following the 20th of April. It appears that defendants sublet the lands to tenants for raising rice for one-half the crop, defendants furnishing the seed, and the testimony relating to the measure of damages on the counterclaim was as to the expense of seed for which defendants secured no return and the shortage in their half of the crop on land on which rice was in fact raised.

I. In each of the two notes sued upon there was the usual provision for attorney fees. The court allowed the statutory fee as to each note, whereas if the attorney fee had been computed on the basis of a total recovery as upon one note it would have been less, and in this respect error is assigned. The notes were executed at different dates and for distinct sums of money advanced to the defendants. Under such circumstances, plaintiff, although asking recovery on these notes in one action, was entitled to have attorney fees computed on the two notes as though suits thereon had been separately brought. *Bankers' Iowa State Bank v. Jordan,* 111 Iowa, 324; *Hannasch v. Hoyt,* 127 Iowa, 232.

1. NEGOTIABLE IN-
STRUMENTS :
taxation of
attorney fees.

II. As to the acreage on which rent should be paid it was stipulated that the amount of land exclusive of levees on which rice was raised was 1,045 acres, and that fifty acres should be added to that amount if the levees on which rice was not actually harvested were to be included. It appears that the levees referred to are narrow strips of land thrown up by the plow to an elevation of not exceeding six inches inclosing the land in small areas of irregular shape for the purpose of retaining the water pumped upon the land for irrigation. These levees

2. LANDLORD AND
TENANT : lease :
construction.

are essential to the raising of crops on irrigated rice land. The court held that as a matter of law the fifty acres occupied by the levees were a part of the acreage harvested within the meaning of the contract and for which defendants should pay rent, and this holding we think was correct. The levees were a part of the cultivated land on which a crop was actually raised, although no grain was actually grown thereon. The land of which the levees formed a part was "harvested," and we find nothing in the lease that would justify the exclusion from the computation of acreage of these narrow strips.

III. As bearing on the question of plaintiff's diligence in prosecuting the work of making repairs, the court received in evidence various letters constituting portions of the cor-

3. SAME: ac-
tion for rent:
counterclaim:
evidence.

respondence between plaintiff's agent, charged with procuring the material with which the engineer Patton was to make the repairs, and said Patton himself, and other letters written by the same agent to other persons and the answers thereto relating to the procuring and shipment of such materials. Under the theory on which the court submitted the case to the jury, this correspondence was, we think, material. The correspondence with Patton commenced before the signing of the lease and indicates the formation and character of the plan mentioned in the lease with reference to which these repairs were to be made. The correspondence between the agent and others simply indicates the difficulty which the agent experienced in procuring the material necessary for the work. The general contention of the appellants is, in this respect, that due diligence is not to be measured by the efforts of agents to induce each other to perform their respective duties. But this objection does not apply to the letters between the agent and those who were solicited to furnish the materials or the transportation thereof, for such persons were not the agents of plaintiff. We find nothing in this evidence which should not have been admitted if the theory on which the case was tried is correct.

IV. It is contended, however, that the contract of lease imposed upon the plaintiff an absolute obligation to have the machinery in repair and working order by the time it was needed for pumping water upon the land, and that, although time was not expressly made of the essence of the contract, nevertheless the effect of the stipulation in the contract, in view of the circumstances and purposes which the parties had in mind, must be construed in effect as making time of the essence. Appellants attempted further to emphasize the contemplated necessity of having the machinery in working order not later than April 20th by offering in evidence conversations between plaintiff's agent and the defendants prior to the making of the lease in which this necessity was referred to. This offered evidence was properly excluded for the reason that it tended to vary the terms of the contract by adding thereto an undertaking on the plaintiff's part not embodied in the instrument as written. If the parties had intended to stipulate for a specific time, it must be presumed they would have done so, and the failure to do so not only rendered the proffered evidence incompetent, but it also threw light on the intention of the parties to be drawn from facts and circumstances surrounding the execution of the contract. The difficulty of restoring the retaining walls and putting in piling necessary to protect the suction pipe in view of the floods in the river which might have been anticipated were apparent to both parties. In fact, all the work was done by April 20th except the restoration of the suction pipe, a repair not expressly mentioned in the written lease.

4. SAME.

Now, considering all these circumstances, we think the court properly left it to the jury to say whether the work was done within a reasonable time and did not suggest any matters for their consideration which did not properly bear upon the question of reasonable diligence in its execution.

We cannot construe the language of the lease as amounting to a covenant to complete the repairs necessary to put the

pumping plant in working order by a fixed time, and there-
fore there was no occasion to apply the rule
that the covenanting party assumes the risk
of damage which may result from his failure
to complete his contract by a time specified.

5. SAME: cove-
nant to re-
pair: breach:
liability.

As there seems to have been no negligence on the part
of Patton in prosecuting the work after the material was
secured, in view of the conditions under which the work had
to be done, we think a suggestion in the
instructions that Patton was the person
selected by both parties to construct the pro-
tection to the river bank as outlined and planned by him was
without possible prejudice, even if erroneous, and we must
refrain from further discussion of that question.

6. SAME: instruc-
tions: preju-
dice.

In view of the fact that the real controversy was as to
whether the repairs were made within a reasonable time under
the circumstances which were within the knowledge and con-
templation of the parties, we think it was not
error to admit evidence tending to show that
defendants made no complaint that the work
was not completed within a reasonable time until long after
the maturing of the crop and at the end of the term of the
lease when demand was made by plaintiff for the payment of
rent. For the same reason, it was not improper to admit
evidence in general as to what was in fact done. The cir-
cumstances attending the prosecution of the work were so
closely connected with each other that plaintiff was properly
allowed considerable liberty in the introduction of evidence
bearing upon the entire subject-matter. There seems to have
been no reason for the court to anticipate that evidence proper
as bearing on the issues in the case would be misconstrued
by the jury as tending to make an unfavorable showing for
defendant in regard to some collateral matter which was not in
issue, and there was no occasion, so far as we can see, for any
limiting or warning instruction in this respect.

7. SAME: cove-
nant to repair:
breach: evi-
dence.

V. In one of the instructions the jury was told that if

plaintiff failed within a reasonable time to make the repairs
required by the lease, and damage resulted therefrom to

8. SAME: cove-
nant to repair:
breach: dam-
ages.

defendants which might have been prevented
by reasonable diligence and expense on their
part, there could be no recovery for damages
which could thus have been prevented in the exercise of rea-
sonable diligence and exertion and by the incurring of reason-
able expense. An objection is made to this instruction on
the ground that, where a landlord covenants to make repairs,
the tenant may rely upon such covenant and recover in gen-
eral for the depreciation in the rental value due to the land-
lord's default. But such a rule does not apply to this case.
The plaintiff did proceed to make the repairs, and it is not
seriously questioned that in general they were made within a
reasonable time. As we understand the record, the sole dif-
ficulty was as to failure to get the suction pipe in place so
that it might be used in pumping water upon the land. The
repair of the suction pipe was not specifically mentioned in
the lease. If now the defendants might at small expense
and in the exercise of reasonable diligence have put this pipe
in place and proceeded with the pumping of water, they
cannot recover the damage for shortage of crop due to failure
to make the pumping plant available at an earlier period.
If the landlord, having covenanted to repair a roof, proceeds
to make the repairs as stipulated, but nevertheless leaves the
roof in some respect defective to the knowledge of the tenant,
and it is practicable for the tenant with reasonable diligence
and at small expense to obviate damage from that cause, he
is bound to do so and cannot recover damages, for instance,
to a stock of goods contained in the building by reason of
the defect in the roof which he might thus have easily pre-
vented. *Cook v. Soule,* 56 N. Y. 420; *Gavan v. Norcross,* 117
Ga. 356 (43 S. E. 771); *Cantrell v. Fowler,* 32 S. C. 589 (10
S. E. 934).

We have frequently recognized the rule that one who is
threatened with damage as the result of the default of another

must prevent such damage if he can do so with reasonable diligence and at slight expense. *Keirnan v. Heaton,* 69 Iowa, 136; *Raridan v. Central Iowa R. Co.,* 69 Iowa, 527; *Agne v. Seitsinger,* 104 Iowa, 482; *McKenna v. Baessler,* 86 Iowa, 197; *Wissler v. Atlantic,* 123 Iowa, 11; *Wood v. Ravenscroft,* 135 Iowa, 346.

This proposition was particularly applicable to the case before us, for it was made to appear in the evidence that defendants had been allowed to retain a considerable sum of money due plaintiff for rent of the premises for the preceding year to apply on the expense of making repairs.

VI. As no substantial damage was allowed to defendants for shortage of the crop due to the failure to make repairs within a reasonable time, rulings of the court as to the admission of evidence which might have affected only the measure of recovery and having no bearing on the right to recover, even if erroneous, were so clearly without prejudice that any further discussion is unnecessary.

9. SAME: evidence: prejudice.

We reach the conclusion, therefore, that the judgment should be, and it is *Affirmed.*

LADD, J., takes no part.


## SUPPLEMENTAL OPINION.

### FRIDAY, OCTOBER 24, 1913.

PER CURIAM. A rehearing was granted in this case. The record has been re-examined with care, and considered by the full bench, except Justice Ladd, who did not sit. The opinion heretofore filed on December 13, 1911, is adhered to, and it is reinstated as the opinion in the case.—*Affirmed.*