J. J. ROBERTS et al., Appellees, v. GEORGE H. WATSON et al., Appellants.

**FRAUD: Acts Constituting—Evidence.** Evidence held quite insufficient
1  to establish fraud in the execution of a lease.

**DAMAGES:    Avoidable Damages—Duty of Landlord.** A landlord
2  should, upon the abandonment of the premises by the tenant before the termination of the lease, use reasonable diligence to rent the property at the best attainable rent, and thereby reduce the resulting damages.

*Appeal from Woodbury District Court.*—MILES W. NEWBY, Judge.

OCTOBER 23, 1923.

ON July 1, 1920, the parties plaintiff and defendant entered into a written contract of lease, by which the plaintiffs let to the defendants a certain described building and property in the city of Sioux Falls, South Dakota, for the "full term of five years, at the rental of $268 per month, payable on the first day of each and every month." The said tenants further undertook to pay the taxes and assessments on said property, "beginning with the year 1920 and concluding with the year 1924." There were other stipulations, the consideration of which is not here

required. This action was begun August 15, 1921, to collect rent alleged to be due and unpaid; and by subsequent amendments to the petition, plaintiffs asked to recover other subsequently accruing rent. Answering this petition, defendants aver that, if the written contract is capable of being construed as a lease for a five-year term, it is the result of a mistake; that the agreement actually made and understood by the parties was for a lease from month to month. They admit that they vacated the leased premises on June 1, 1921, after payment in full to that date. They further allege that they were induced to enter into the lease by the deceit and misrepresentation of the plaintiffs, to the effect that a certain sidetrack of the Milwaukee railroad which had been built to within 45 feet of the premises could be extended to the rear of the leased lot, thereby furnishing defendants with trackage facilities, for a nominal consideration. Because of such alleged mistake and deceit, they ask that the written contract be reformed, and construed as an agreement of lease from month to month only, and that plaintiffs' petition be dismissed.

Trial was had to the court, which found the plaintiffs entitled to the judgment and relief prayed, and denied the defendants' prayer for reformation of the contract. From this decree the defendants have appealed.—*Affirmed*.

*E. E. Wagner*, for appellants.

*Burgess, Gill, Sammis & Boylan*, for appellees.

WEAVER, J.—I. We first consider whether appellants made a showing entitling them to a reformation of the written contract of lease. This question, we are very clear, must be answered in the negative. The writing is expressed in unambiguous terms, as the letting of the property to the defendants for the full term of five years, and it is quite incredible that the lessees, or any of them, who are apparently men of at least ordinary ability and understanding, could by any possibility have believed that it bound them only as tenants from month to month. They do not pretend that they did not know the contents of the instrument to which they attached their signatures, or that any trick or artifice was practiced upon them to prevent their reading it

for themselves; and upon the most elementary principles of the law of contracts, they cannot be heard to say that they understood they were not binding themselves to an observance of its express terms. The failure of the defense in this respect is too manifest to justify us in taking further time for its discussion.

II. The plea that appellants were fraudulently deceived and misled into executing the writing by deceit practiced by appellees is likewise without substantial support. It appears that plaintiffs erected and prepared the building in question for the purpose of leasing it to defendants, who were to occupy it in carrying on a business as dealers and distributors of auto cars and tractors. A side or spur track of the Milwaukee railway reached to within 45 feet of the rear of the building. Defendants expressed the desire to have the benefit of this trackage, and plaintiffs made the statement that it would be easy to have the existing track extended to the rear of the leased building; but the evidence is wholly barren of testimony tending to show that plaintiffs undertook or agreed to make or procure such extension. Indeed, defendants do not, in pleading or otherwise, pretend that the lease was made subject to any such condition. As a witness, one of the defendants says of the negotiation:

1. FRAUD: acts constituting: evidence.

"I told them we had to have trackage. * * * They showed us this property. There was one lot between their property and the track already extended. They said, if we would assume the lease on the building that they had already contracted to build for another gentleman, we could arrange to have that trackage run up behind the building. * * * They said that arrangements could be made to run the track up past the platform on the rear of the building, at a consideration. I think it was 6 per cent we had to pay the Milwaukee on the track. It wasn't very much; so that we naturally assumed we could get the track up there. * * * I believed and relied upon the statements the plaintiffs made to me with reference to being able to have this track extended up to and across the rear of the property, by applying to the railroad company and simply paying them the sum as I have stated."

This testimony is, in substance, corroborated by the other defendants; but, as we have already said, it has no tendency

to sustain the proposition that the proposed extension of the spur track was made a condition of defendants' obligations to carry out their agreement. Indeed, the defense on this ground appears to have been an afterthought; for, although the lease was made in July, 1920, it is conceded that no complaint or protest was offered by defendants to plaintiffs on that score until after the former had abandoned possession and repudiated their obligation to further perform their agreement. Again, it appears that defendants did not abandon the premises until nearly a year after taking possession of the leased property, when they sought to terminate their tenancy by a letter or notice to the plaintiffs, as follows:

"Sioux City, Iowa, 6-4-21.

"Roberts and Seubert,
    "Sioux Falls, S. D.
"Gentlemen:
    "As we have decided to discontinue our Sioux Falls branch we will not need the building any longer and as our lease with you is by the month only we hereby notify you that lease is canceled. We will pay the rent to July 1, 1921, which will give you time to get another tenant.
            "Yours very truly,
        "Watson Automobile Company—By Geo. H. Watson."

No suggestion is here made of any default on the part of the plaintiffs with reference to the trackage connection, or of any other obligation on their part. The agent of the defendants testifies that, as early as September, 1920, he had found that it was going to be difficult to get the trackage; that he spoke to one of the plaintiffs about it, and asked him "if he wasn't going to give us any help on it, and he said, 'No;' * * * it wasn't up to them at all; it was up to us; that they didn't have anything to do with it."

With that knowledge, appellants continued in possession until June of the next year, and then made no complaint, but surrendered the lease, not because of the want of trackage, but because they "had decided to discontinue" that branch of their business. The trial court did not err in holding that this defense was not made out.

III. Appellants also make the point that plaintiffs could have avoided any material loss on account of rent and other charges accruing after the possession of the building was aban-

2. DAMAGES: avoidable damages: duty of landlord.

doned. It is shown that, after defendants vacated the property, it remained vacant for a time, and then was leased to other tenants at $200 per month. The court entered judgment for plaintiffs for the full amount of unpaid rent and taxes, less the receipts from other tenants; and in this there was no error. It was, of course, the duty of the plaintiffs to use reasonable diligence to let the property at the best obtainable rent, and thereby obviate or reduce the resulting damages; but we find nothing in the record which fairly indicates a failure in this respect.

The decree appealed from appears to be equitable and just, and it is, therefore,—*Affirmed.*

PRESTON, C. J., STEVENS and DE GRAFF, JJ., concur.