BEN S. BENSON et al., Appellees, v. IOWA BAKE-RITE COMPANY, Appellant.

OCTOBER 16, 1928.

REHEARING DENIED JANUARY 23, 1929.

*Thomas J. Bray*, for appellant.

*McNett & McNett*, for appellees.

ALBERT, J.—Mary T. Leighton was the owner of the prem-ises in controversy, and, she being deceased before the commencement of this suit, plaintiffs sue as her executors. Defendant is a corporation, organized under the laws of the state of Iowa.

On July 31, 1922, Mary T. Leighton and the defendant, the Iowa Bake-Rite Company, entered into a lease for the store room and basement situated at No. 104 South Market Street, in the  city of Ottumwa, Iowa, for a term of three years, commencing August 1, 1922, at a monthly rental of $165, to be paid monthly in advance. The defendant moved into said building, and occupied the same until the 13th day of July, 1924, when a fire occurred in said leased premises, which rendered the same untenantable, and defendant moved its baking machinery and personal property into another building. Defendant paid the rent for the

month of July, and the plaintiffs sue to recover for the balance of the term under the lease.

Five defenses are made:

1. That the fire made the building untenantable, and the termination of the lease because of the fire.

2. That because of the fire the building became untenantable, and the owner would not agree to reconstruct the same, and that appellant terminated and surrendered the lease, and thereby was released from liability for the payment of rent thereafter.

3. That the leased premises were not restored to a tenantable condition at any time during the balance of the term thereof, which expired August 1, 1925.

4. That it was the duty of the appellees, after the fire, to reconstruct and repair the leased premises, and also the duty of appellees, after appellant terminated the lease, to use reasonable diligence to relet the property, which they refused and neglected to do.

5. The affirmative defense of estoppel.

At the close of all of the testimony, each party made a motion for a directed verdict. Defendant's motion was overruled, and plaintiff's motion sustained. A verdict was returned, and judgment entered for $1,815 with interest.

The defendant corporation was engaged in operating bakeries in several cities within this state, and in the city of Ottumwa operated both a wholesale and retail business, and was so engaged at the time of the fire in controversy. The premises rented under this lease were only a part of the building, there being at least one store room, and possibly more, above the same, as a part of the same building, which was flanked on either side by a similar building, one of the adjoining buildings being occupied for restaurant purposes. The fire occurred on July 13, 1924, and originated in a partition between the restaurant and appellant's store room. It resulted in the burning of a part of the joists in the floor between this room and the basement, and the destroying of the partition wall between these two rooms for a distance of about 20 feet. The windows in the rear of the Bake-Rite room were broken by the heat or by the firemen, and the door and transom were scorched so that they had to be replaced. The painting and decorating were destroyed, a large

amount of water being poured into the room by the fire department, and the walls and ceiling were also damaged from the use of the water. There seems to be no dispute in the testimony that the room occupied by the Bake-Rite Company was untenantable immediately after the fire.

Ben S. Benson, the agent of appellees, testified that the ovens used by the Bake-Rite Company were put out of operation by the fire, and that he knew that the fire made their room untenantable, not only from the fire itself, but from the smoke and water, and that the front room was entirely water-soaked and damaged by the fire. Immediately after the fire, the representatives of the Bake-Rite Company went to Benson, who had charge of the renting of this building, and wanted to know whether he was going to repair the room as quickly as possible, and he refused to give them a satisfactory answer to this question. This occurred on the Tuesday following the fire, which was on Sunday. Benson admits that Sunstrum (one of the officers of the defendant company) told him that he considered that the lease would terminate, and that he (Benson) would receive written notice of the termination of the lease because of the fire, which notice was subsequently given. Benson also admits that, on July 30th, the local manager of the Bake-Rite Company tendered him the keys to the leased property, and that he accepted them, and never tendered them back to any officer of the Bake-Rite Company.

On July 15th, in pursuance of the oral conversation between the officers of the Bake-Rite Company and Benson, a letter was written, in which inclosure was made of a check for $165 for the rent for July, the letter proceeding:

"This letter will give you official notice that we consider our lease terminated by reason of the recent fire, and in accordance with the terms of said lease; and which letter verifies the verbal notice given you today."

On July 18th, Mary T. Leighton, through her agent, acknowledged receipt of the above letter, and, with reference to the termination of the lease, the letter proceeds:

"The undersigned hereby denies your right to terminate said lease under the terms thereof by reason of said fire, and hereby notifies you that promptly after the occurrence of the fire

she took steps toward the repair of the premises so leased by you and within a reasonable time for the repair of same will have the damage caused by the fire repaired and in good shape. She therefore insists that said lease is still binding and was not terminated by reason of said fire, nor under the terms of said lease, are you entitled to terminate same by reason of said fire."

On July 26th, an attorney for the Bake-Rite Company indited a letter to Benson, as agent for appellees, calling attention to the terms of the lease, and reciting that the same was terminated, and that the company considered its liability for the payment of rent under the terms of the lease at an end.

Some further correspondence passed between these parties along similar lines. The Bake-Rite Company insisted that they had a right under the lease, which they had exercised in terminating the same; the other parties claiming that no such right existed, and that said lease had not been terminated. Both parties had insurance on this building; and, of necessity, neither could do anything until adjustments were made by the insurance companies, which adjustments were made about the 28th day of July, after which the appellees promptly contracted with builders to repair the damages done to the building by the fire. This damage was all repaired, except the painting, papering, and decorating of the room, which was never done. At this point, the appellant insists that this work was necessary, in order to make the room again tenantable for its business purposes. Appellees insist that the building was tenantable without the painting, papering, and decorating. This question becomes important, by reason of certain provisions of the lease, reading in part as follows:

"The second party agrees on his part to pay said rent as above stipulated except when the said premises are untenantable by reason of fire. * * * Should the building herein leased be destroyed by fire or otherwise, before or after the commencement of this lease, then this lease to be void."

It is insisted by appellant that, under the above provision of the lease,—it being admitted that the building was untenantable immediately after the fire,—it thus continued until the end of the lease, and therefore that it is not liable for the rent after the time for which it had already paid. The question therefore

was (it being assumed that the repairs had been made on the building), Was it necessarily a part thereof, to make the building tenantable, that the room should be painted, papered, and decorated? It seems to us that this is a question of fact, and one which is disputed in the record. This being so, it was a question for the jury to answer, and not one for the court.

The next question raised is as to the force and effect of the second clause above quoted from the lease, to wit: "Should the building herein leased be destroyed by fire or otherwise, then this lease shall be void."

In the case of *Chase & Co. v. Fleming*, 143 Iowa 452, we had before us a lease in which the terms were that:

" * * * in case the buildings on said premises or any part thereof shall be damaged by fire * * * , so that the same shall be thereby rendered unfit for use and occupation, then and in such case the rent hereinbefore reserved, * * * shall be abated until the same premises shall have been duly repaired and restored by the lessors * * * ; or in case the said buildings shall be totally or substantially destroyed, then at the election of the lessors * * * the estate hereby created may thereupon be determined."

We there held that the words "total or substantial" destruction would not import the idea of annihilation, but an effective destruction of the building, as suggested. We further said in that case:

"In other words, although there remain substantial parts or elements of the building some or all of which could be used in restoring it to its original condition, yet, if the injury is so complete as to render it entirely untenantable, and the restoration of it is, in practical effect, the construction of a new building, rather than a mere repair of the old one, then it is destroyed 'substantially,' if not 'totally,' within the meaning of the agreement. Stated otherwise, the subject of the treaty was the specific organized thing which we call a building, and it was the destruction of that thing for the practical uses for which it was erected, and not the destruction of all the materials or all the parts comprising it, which would justify a cancellation of the lease. The question of restoration or repair depends, also,

in some degree upon its wisdom or practicability as a business proposition. The inquiry is not satisfied by a mere showing that the restoration of the building, incorporating the original foundation and walls, is possible, but the question of the expense to be thus incurred, in comparison with the construction of a new building with new materials, and a consideration of the value, safety, and desirability of the repaired or restored building, as compared with a new one of like plan and proportions, are matters which the lessors are not required to ignore in reaching their conclusion.''

In the *Chase* case, the evidence showed that to construct a similar building would cost from $45,000 to $55,000, and the cost of restoring the old building after the fire was estimated at from $27,000 to $47,000. It was there held that there was a substantial destruction of the building, to all practical purposes, and that, by the expenditure of this amount by way of repairs, ''the resulting structure would have been in all reasonable intents a new building.'' Applying the doctrine of the *Chase* case to the case at bar, we conclude that there was not a destruction of this building, within the meaning of the provisions of the lease, which would render the lease void from and after the time of the fire. As throwing light on this subject, see *Tedstrom v. Puddephatt*, 99 Ark. 193 (137 S. W. 816) ; *Barry v. Herring*, 153 Md. 457 (138 Atl. 266) ; *Corbett v. Spring Garden Ins. Co.*, 155 N. Y. 389 (50 N. E. 282) ; 16 Ruling Case Law 963, Section 473.

Another defense made was the claim that the lessee had abandoned and surrendered said premises, and thereby was not liable for future rent. Some of the officers of the Bake-Rite  Company testified that they went to Benson immediately after the fire, and said, in substance, that, if he was not going to repair the building for their occupancy, they would surrender the same, and elect to cancel the lease; and that Benson refused to say whether or not he would repair the building, and they thereupon told him that they would notify him of the termination of the lease (which they afterwards did by letter) ; and that he said, ''All right.'' It is the claim of the appellant that this amounted to a mutual agreement to terminate or abandon the lease. The

assent of Benson, as testified to by the officers of the company, is denied on his part.

The law seems quite well settled, and it is, in fact, undisputed in the brief of the appellees herein, that parties to a lease may, by mutual consent, terminate the same, and if they do, the tenant is not liable for future rent, unless the same is stipulated for in the agreement terminating the lease. The question in the record before us, however, we do not think was a question for the court. The Bake-Rite Company insists that by agreement the lease was abandoned and terminated, and the local representative of the landlord denied that he so agreed or consented. This surely leaves a question of fact for the jury. There was testimony on both sides of this proposition: to wit, certain letters written by Benson, in which he refused to terminate the lease, and certain letters written by the Bake-Rite Company, or its representatives, asserting that the lease was at an end.

Appellant further insists that, after the adjustments were made with the insurance companies, and they moved their property from the building, they turned the keys over to Benson, and he accepted the same, and by so accepting he confirmed the termination of the lease. Benson testified that he accepted said keys simply for the purpose of getting possession of the building, to make the necessary repairs. Under this state of the record, we think this question as to whether or not there was a termination or abandonment of this lease by mutual agreement should have gone to the jury.

It is further insisted that, if there was not an abandonment by mutual agreement, but an abandonment in fact by the Bake-Rite Company, then a duty rested upon the landlord to use reasonable efforts to reduce the damage by reletting the property. On this question the cases generally are not in harmony. In this state we are committed to the doctrine that it is the duty of the landlord to minimize his damage, when the tenant abandons leased property, by using reasonable diligence to relet the property. In *Reinking v. Goodell*, 161 Iowa 404, at 412, we said:

"We have frequently recognized the rule that one who is threatened with damage as the result of the default of another must prevent such damage if he can do so with reasonable diligence and at slight expense."

In *Hickman v. Breadford,* 179 Iowa 827, we had before us a set of facts in which the tenant abandoned the premises, and the landlord took possession, and re-rented the same. The case holds two things: First, that the re-entry and re-leasing under such circumstances do not work, by operation of law, an acceptance of the tenant's abandonment; and second, that, where the landlord so re-enters before the expiration of the lease, and, for the benefit of the tenant and to avoid loss, re-leases the property to a new tenant, he is entitled to the expenses incident to the procurement of a new tenant. At most, this is the holding in that case. Whatever was said in the case with reference to the right of the landlord to allow the property to stand idle, and to hold the tenant for the entire rent, is merely dictum.

In the case of *Roberts v. Watson,* 196 Iowa 816, we had this question squarely before us, and we there said:

"It was, of course, the duty of the plaintiffs to use reasonable diligence to let the property at the best obtainable rent, and thereby obviate or reduce the resulting damages; but we find nothing in the record which fairly indicates a failure in this respect."

As supporting this contention, see *International Tr. Co. v. Weeks,* 203 U. S. 364 (51 L. Ed. 224); *Zabriskie v. Sullivan,* 80 N. J. Law 673 (77 Atl. 1075); *Rose Merc. & Mfg. Co. v. Smith,* 139 La. 217 (71 So. 487); *West Side Auction House Co. v. Connecticut Mut. L. Ins. Co.,* 186 Ill. 156 (57 N. E. 839); *Campbell v. McLaurin Inv. Co.,* 74 Fla. 501 (77 So. 277). The burden of proof was on the appellees to show diligence in reletting the property. *Woodbury v. Sparrell Print,* 198 Mass. 1 (84 N. E. 441).

Under the record in this case, it is claimed by the appellant that the appellees had an opportunity to relet this building at the same rental; and the appellees admit this, but claim that the renter was not a desirable one, because of the line of business in which he was engaged. The question of whether or not appellees were entitled to refuse to relet the building on the ground alleged by them under the record, was also a question of fact for the jury.

Under the conclusions we reach on these various questions,

it is apparent that the court was not warranted in directing a verdict in favor of the appellees.—*Reversed.*

STEVENS, C. J., and MORLING and WAGNER, JJ., concur.

DE GRAFF, J., concurs in result.