**B. L. Wohl, Plaintiff-Appellee, v. Michael Yelen, Defendant-Appellant.**

**Gen. No. 47,573.**

First District, First Division.

September 14, 1959.

Released for publication October 19, 1959.

456

Shaffer, Seelig, Mandel & Shapiro, of Chicago (George L. Shapiro and Ellis Shaffer, of counsel) for defendant-appellant.

Louis R. Connell, of Chicago, for plaintiff-appellee.

JUSTICE SCHWARTZ delivered the opinion of the court.

This is an appeal from an order denying a motion to vacate a judgment for rent entered upon a confession of judgment provision in a lease. The matter arises solely on the motion and supporting affidavit. The question presented to us involves the extent of a lessor's obligation to rent premises vacated by a lessee during the term, and thus mitigate his damages.

Defendant leased an apartment from plaintiff in April 1957, running to April 30, 1958. The lease contained a cognovit provision. On January 1, 1958, defendant vacated the premises covered by the lease. Plaintiff then secured a judgment by confession for rent for the leased premises for January 1958, plus costs, in an aggregate amount of $237.50. Within thirty days defendant moved to vacate the judgment and filed an affidavit in support of the motion. The motion was denied.

The affidavit alleged that plaintiff's agent in December 1957 consented to a sublease of the premises if defendant could obtain a tenant at the same rental and that defendant advertised in the neighborhood newspaper and displayed a "For Rent" sign supplied by plaintiff's agent. Upon defendant's presenting a prospective subtenant, plaintiff's agent said he would think it over, and later refused permission to sublet. Plaintiff's agent said that plaintiff was no longer interested in subleasing, but desired to sell the building and felt that a vacant apartment would promote a sale. Defendant then vacated the premises.

Plaintiff argues that a motion to vacate a judgment by confession is to be construed strictly against the party presenting the motion, and that an affidavit supporting such a motion is closely scrutinized and its intendments taken most strongly against the movant. Plaintiff has some authority to this effect. However, those cases all antedate the Practice Act now in effect. Under that Act, pleadings are to be construed liberally, to the end that controversies may be speedily and finally determined according to the substantive rights of the parties. Sec. 33 Civil Practice Act [Ill. Rev. Stats. 1957, ch. 110, § 33], effective January 1, 1956. It is in this light that defendant's affidavit should be examined.

■ The first issue presented by this appeal is whether one Gumbiner, with whom defendant dealt, was the agent of plaintiff. Plaintiff has rightly suggested that agency cannot be shown by the declarations of the alleged agent alone. This has been a much misunderstood doctrine. An agency cannot be proved by the statement of the purported agent that he was the agent; but the conduct of the purported agent, what he did with respect to the subject matter of the transaction, his assumption of authority, and his actions in relation to his supposed principal, are all circumstances which may be put in evidence.

■■ The instant case is a good example. Defendant, as the tenant, dealt exclusively with Gumbiner, as the agent of the building, and signed the lease at the direction of Gumbiner. He made Gumbiner an offer to cancel the lease and give plaintiff $400 and carpeting and draperies in the apartment. Gumbiner refused the offer, but made the counteroffer that if defendant could obtain a tenant at the same rental defendant was paying, plaintiff would consent to a sublease, and it was Gumbiner who gave defendant a "For Rent" sign to place on the premises. These are circumstances which tend to prove the agency. Faber-Musser Co. v. William E. Dee Clay Mfg. Co., 291 Ill. 240, 246. They are by no means conclusive, but taken together with that time-honored but insufficiently used rule—that if the evidence with respect to an issue is within the control of an adverse party, it is he who has the burden of proof—they are sufficient. That is peculiarly true in a situation such as the one before us.

■ The realities of leasing within a great metropolitan center such as Chicago are known to every one, and the court takes cognizance of them. Lessors rarely manage buildings of any substantial size by themselves. Such buildings are managed in the main by real estate agencies which employ subagents. Les-

sors frequently avoid direct contact with tenants, and it is usually left to an employee in a real estate firm to deal with them. In such circumstances, the best proof of agency is that of which the case in its nature is susceptible, and that is all that is required. Defendant has offered such proof in the instant case.

 It is contended by defendant that plaintiff accepted a surrender of the lease. A yielding up of a lease is sufficient consideration for the release of the covenant to pay rent. This surrender may be accomplished by a parol agreement. Alschuler v. Schiff, 164 Ill. 298; McNeill v. Harrison & Sons, Inc., 286 Ill. App. 120. The facts alleged here are not adequate to prove such a surrender. All that the allegations show is a refusal to consent to the sublease and a statement that lessor "was no longer interested in subleasing the apartment but was now interested in selling the building, and it would be easier to do so if there was a vacancy in the apartment occupied by Petitioner, rather than to enter into a sublease agreement with a new tenant." That does not show a mutual surrender of the leasehold interest. In Alschuler v. Schiff, supra, the lessor said: "If you don't want to stay here you can move out." In McNeill v. Harrison & Sons, supra, the landlord signified his acceptance of the substitute tenant, and a release of a former tenant. There is no such release or choice here.

It is next contended that plaintiff was obligated to accept the subtenant tendered to him by defendant. This argument is made on two bases: First, that the prohibition against subleasing contained in the lease was waived by plaintiff and it was agreed between plaintiff and defendant that if defendant could obtain a sublessee at the same rental provided for in the lease, plaintiff would consent to a sublease of the apartment to such tenant; and, second, that there is a general duty to mitigate damages.

460

■ ■ As to the first proposition, a covenant against assignment without the lessor's consent is for the benefit of the lessor alone and may be waived by his subsequent inconsistent conduct amounting to an estoppel. Webster v. Nichols, 104 Ill. 160, 171; Waukegan Times Theatre Corp. v. Conrad, 324 Ill. App. 622. The restriction once waived ceased to exist as one of the terms of the lease in reference to the particular assignment. McConnell v. General Roofing Mfg. Co., 187 Ill. App. 99, 107. The complaint shows that pursuant to their oral agreement with respect to subleasing (obviously contrary to lessor's consent restriction in the lease), plaintiff furnished defendant with a "For Rent" sign which defendant posted on the leased premises, and defendant also placed a want-ad in a newspaper, thus obtaining a prospect whom he presented to plaintiff. Thereby plaintiff was estopped to deny the validity of the oral agreement and is bound to his waiver of the covenant against assignment. Moses v. Loomis, 156 Ill. 392. See Tiffany, Landlord & Tenant, Sec. 152(h). He was bound to accept the sublessee tendered, unless he had some valid objection to the new tenant. The only objection offered by plaintiff was that the building would be easier to sell with the apartment vacant. There is no claim that the tenant was irresponsible financially or that he was not a suitable tenant. Gelino v. Swannell, 263 Ill. App. 235; Edelman v. F. W. Woolworth Co., 252 Ill. App. 142.

As for the general duty to mitigate damages on abandonment, the law in Illinois is as yet unsettled. The earliest case was Resser v. Corwin, 72 Ill. App. 625, 628–9, where, after the abandonment of the premises by the lessee, the lessor regained possession and later sued to recover rental and for other damages. There was a judgment in favor of the lessee. On appeal, the Appellate court for the 2nd district reversed

461

the cause and remanded it for new trial, stating the proper measure of damages as follows:

"If appellant was entitled to recover, his measure of damages would be, the rent agreed to be paid, less whatever he could have made out of the land by the use of due diligence after it came into his possession. In other words, he could only recover such sum as would make him whole."

No authorities on that point were analyzed or cited.

The Supreme court in 1900 passed on the issue by way of dictum in West Side Auction House Co. v. Connecticut Mutual Life Ins. Co., 186 Ill. 156, when it stated, p. 161:

"Upon the abandonment of the leased premises by the tenant it was the right and the duty of the landlord to take charge of the premises, preserve them from injury, and, if it could, re-rent them, thus reducing damages for which the lessee was liable."

A few years later, in Rau v. Baker, 118 Ill. App. 150, the court refused to extend the dictum in the West Side Auction case into a general duty to mitigate on mere abandonment by the lessee. The cases in the Appellate court following the Rau case are conflicting. Some have either overlooked or refused to follow the Rau case, and have extended the dictum in the Resser and West Side Auction cases into a general rule requiring the lessor to mitigate on mere abandonment. Hinde v. Madansky, 161 Ill. App. 216, 220; McCormick v. Loomis, 165 Ill. App. 214, 216; Contratto v. Star Brewery Co., 165 Ill. App. 507, 511; Levy v. Burkstrom, 191 Ill. App. 478. In Sears v. Curtis, 189 Ill. App. 420, there was an allegation that the lessor had promised to do all he could to re-rent. The court cited the McCormick and West Side Auction cases in stating that

"it was the duty of plaintiff to exercise due diligence in re-renting the premises, and we think that under the showing made, the court should have opened up the judgment."

On the other hand, the following cases have followed Rau v. Baker, supra, and refuse to recognize a general rule to mitigate on abandonment. Scanlan v. Hoerth, 151 Ill. App. 582, 586; West v. McNaughton, 211 Ill. App. 261; Harmon v. Callahan, 214 Ill. App. 104, 109. In Hirsch v. Home Appliances, Inc., 242 Ill. App. 418, the lease expressly provided that the lessor should not be held to any duty of diligence to relet the premises. The court reviewed the prior conflict of decisions on the general duty to mitigate and stated that it was disposed to follow the rule in the Rau case, repudiating any duty. However, the court then pointed out that the express provision in the lease removing any duty from the lessor to relet made it unnecessary to base the decision on either rule of mitigation, thereby rendering its disposition to follow Rau v. Baker obiter dicta.

The same conflict exists in other jurisdictions. The majority favor the rule against requiring the lessor to re-enter and use diligence in re-renting. Cf. the cases cited in Gruman v. Investors Diversified Services, Inc., 247 Minn. 502, 78 N.W.2d 377. A minority apply a rule of mitigation similar to that used in other contracts. Benson v. Iowa Bake-Rite Co., 207 Iowa 410, 221 N. W. 464; Marmont v. Axe, 135 Kan. 368, 10 P.2d 826; Anderson v. Andy Darling Pontiac, Inc., 257 Wis. 371, 43 N.W.2d 362. Also, see LaGonda Corp. v. Cancasci, 4 So.2d 775 (La. App.); Weinstein v. Griffin, 241 N. C. 161, 84 S.E.2d 549.

Virtually all the cases refusing to accept the rule of mitigation involve landlords who have not re-entered and have not been presented with acceptable tenants

463

by the defaulting tenant. These cases therefore may be said to hold that a landlord need not seek out new tenants after the defaulting tenant abandons. Only a few cases involve the factual situation at bar, namely, the arbitrary refusal to accept a new tenant proffered by the defaulting tenant.

 The objections generally raised to the mitigation of damages in a lease case are the following: (1) the lessor would be required to seek out new tenants continually; (2) the lessor's actions might be held to constitute an unwilling acceptance of the surrender; and (3) the lessor would be required to accept in a personal relationship a party he does not wish to accept. In the instant case, a new tenant was presented to plaintiff by defendant and there was no occasion for the lessor to seek out a new tenant. The new tenant was offered as a sublessee, so that defendant would still be liable on the lease, and the acceptance of the proposed sublessee would not constitute a surrender. With respect to the personal character of the relationship, in employment contracts the personal element is even more important than that involved in a lease, yet the courts have held that wrongfully discharged employees must mitigate damages by accepting similar available employment. Williams v. Chicago Coal Co., 60 Ill. 149; Williams v. Scott, 70 Ill. App. 51. Thus, all the reasons advanced for excepting leases from the rule of mitigation do not exist in the instant case. We will, therefore, follow that line of cases which holds that the duty to mitigate is applicable to lease contracts.

The court below erred in denying defendant's motion to vacate the judgment by confession. The judgment is reversed and the cause is remanded with directions to open up the judgment, and for such further pro--

ceedings as are not inconsistent with the views herein expressed.

Judgment reversed and cause remanded with directions.

DEMPSEY, P. J. and McCORMICK, J., concur.